Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Appellant,

v.

Edgar L. WARREN, Appellee.

No. 7688.

United States Court of Appeals Tenth Circuit.

Dec. 29, 1964.

834

Martin Jacobs, Attorney, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., and John Quinn, U. S. Atty., on the brief), for appellant.

Fred Tharp, Clovis, N. M. (of Smith, Smith & Tharp, Clovis, N. M.) for appellee.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

PICKETT, Circuit Judge.

This is an appeal by the Secretary of the Department of Health, Education and Welfare from an order of the United States District Court for the District of New Mexico, finding that on the record as a whole there was no substantial evidence to sustain the departmental determination that the appellee, Edgar L. Warren, was not disabled within the meaning of the Social Security Act, and therefore not entitled to the establishment of a period of disability or to disability insurance benefits under the Act.[1] As authorized by 42 U.S.C. § 405(g), Warren brought this action in the United States District Court to review the final decision of the Secretary after a hearing.

On October 17, 1960, Warren filed his application alleging that because of frequent and severe migraine headaches he was disabled as defined by the Act. A representative of the Secretary interviewed Warren after the claim was filed, and the report of this interview describes Warren's condition as it was related to the representative.[2]

A hearing was held before an examiner on October 27, 1961 at which time

---

1. §§ 216(i), 223 of the Social Security Act, 42 U.S.C. §§ 416(i), 423—Determination of a period of disability, (The so-called "disability freeze"), § 216(i) of the Social Security Act, (42 U.S.C. § 416(i), is for the purpose of eliminating the no-income period of disability from wage records, thus preventing reduction in the average monthly wage and ultimately the amount of old-age benefits.

2. The report contains this information: "DESCRIPTION OF IMPAIRMENT. 1. HISTORY OF THE CONDITION: He says he thinks his trouble started when he was about 15 years old. He was injured in an automobile accident. He was knocked unconscious by a lick on the head. His present condition, or the beginning of the current episode became severe in early 1955 and he described it as recurring severe headaches. He said the pain became so intense he just beat the desk, cried, stomped the floor, screamed because of the severe pain. It finally became so bad he was forced to stop trying to work in 6/60. "2. SYMPTOMS: His main complaint is severe headaches. He said he had

one yesterday that lasted about 3 hours, that 'almost drive him nuts.' "3. MEDICAL CARE AND TREATMENT: He has had surgery on his head but he thought this was only exploratory, as he was suspected of having a brain tumor, but none was found. He said he gets shots to relieve pain when he has a seizure of head pain; he wears glasses. "4. OTHER IMPAIRMENTS: He said he is bothered some with arthritis in his feet but this would not keep him from working if the head condition should be cleared up.

\* \* \* \* \*

"VOCATIONAL. 1. EFFECT OF DISABILITIES: He came to the resident station alone. He was managing a theatre and had a great deal of freedom as to his hours and details of his day-to-day activity, so his hours were somewhat flexible. He said the pain in his head just became so severe and frequent he could not concentrate and even with his freedom afforded by his position, he simply could not do a minimum adequate job."

Warren appeared and testified. He recalled having headaches early in life, and that a number of years prior to 1955 he had first sought medical help. He said the headaches first became severe enough to interfere with his work in 1955, and that they also interfered with his work as a theater manager beginning in March, 1960. He said he put on a front for 2 or 3 months, but couldn't hide it any longer. His employment was terminated in June, 1960. Since that time he stated he has looked for work, but was unable to find any, and that he drew unemployment compensation for 26 weeks. Warren also testified that his appetite was good, but he sleeps poorly; that he does only limited reading and automobile driving; that he has no hobbies but does listen to hi-fi music when he feels like it; that he is often nauseous with the headaches and that he presently spent approximately two days a week in bed.

Although there is indication that Warren's problem may have begun when he was 15 years of age, and that he first sought medical relief in the early 1940's, it was in 1955 that the headaches first became a serious impediment to his work. He was hospitalized twice in 1955 and again in 1956 for tests and treatment. In seeking relief, Warren has undergone such tests as a spinal puncture, bilateral carotid arteriogram, ventriculogram, and an electroencephalogram. He has been treated with a number of drugs, administered both orally and by injection, including a course of treatment referred to as "histamine desentization" for the relief of his pain. While some medication afforded temporary relief, none of the treatments have produced lasting results.

There would be no benefit in a detailed recitation of the medical evidence offered to prove Warren's claim. It is sufficient to note that the reports of all the medical experts, while expressing a lack of organic cause, indicate with remarkable consistency that Warren is suffering from severe migraine headaches. Two of these experts were of the opinion that he is totally disabled from the headaches, the other two did not express opinions.

The decision of the hearing examiner did not discuss in detail the medical evidence, but concluded that Warren was not disabled. The examiner's statement that the "pain is occasional and intermittent and when present is responsive to therapy and consequently is not continuously 'disabling'" is contrary to the medical reports.

The Appeals Council considered the record, including the medical reports, and adopted the finding of the examiner. The Council's determination that Warren is not disabled is based principally upon what were termed inconsistencies in his statements and medical reports, the fact that there was no proof of organic cause, and that the intensity of pain cannot be measured by objective standards. The inconsistencies referred to by the Council include the date of an automobile accident which rendered Warren unconscious for 48 hours. It is quite obvious from the record that this injury occurred when Warren was about 15 years old, and not in 1952, as stated by one of the doctors in a report made several months after his examination of Warren [3]. Whatever the date, there appears to be no relationship between the time of the accident and Warren's present condition.

The Council was impressed, as was the examiner, with the fact that Warren had suffered no marked loss of weight as a result of the headaches. However, there is a total lack of evidence to show that a loss of weight necessarily follows from the experience of migraine headaches. As to the lack of organic cause, it appears to be the concensus of the medical opin-

3. The report states that Warren gave a history of severe headaches since the age of 15 years and "* * * re- veals that in 1952 he was in an automobile accident and was unconscious for 48 hours."

ions and reports that the cause or causes of migraine headaches are unknown.[4]

■ To qualify for either of the requested benefits, the applicant must be "disabled" as that term is defined in the Act. "[T]he term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C. §§ 416(i) (1) (A), 423(c) (2).

■ Findings of fact by the Secretary, if supported by substantial evidence, are conclusive upon a court of review. 42 U.S.C. § 405(g). Celebrezze v. Bolas, 8 Cir., 316 F.2d 498.

■ The Act requires that the disability be "medically determinable," but medical opinions are not conclusive of the ultimate fact of disability. Such opinions regarding a claimant's disability however, do constitute a proper basis from which inferences can be drawn on these matters. Underwood v. Ribicoff, 4 Cir., 298 F.2d 850; Teeter v. Flemming, 7 Cir., 270 F.2d 871, 77 A.L.R.2d 636.

■ The activity in which the applicant must be able to engage must be both substantial and gainful. "Disabled" does not mean "completely helpless", but means an inability to engage in "any substantial activity." Teeter v. Flemming, supra; Flemming v. Booker, 5 Cir., 283 F.2d 321. Such ability is not to be measured by the hypothetical average man, but by the particular claimant's capabilities. Celebrezze v. Bolas, supra; Kerner v. Flemming, 2 Cir., 283 F.2d 916. The word "any" in the statute is to be construed by what is reasonably possible, not what is conceivable. A theoretical ability to so engage is not enough if no reasonable opportunity is available. Kerner v. Flemming, supra; Celebrezze v. Bolas, supra. A claimant is "not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment." Butler v. Flemming, 5 Cir., 288 F.2d 591, 595; Underwood v. Ribicoff, supra.[5] The cited cases make it clear that in determining whether a particular applicant is unable to engage in any substantial gainful activity, that is, what can he do and what is available for him to do, consideration must be given to his age, education, training, experience, and mental and physical capabilities.

■ Warren, the claimant in the present case, is 50 years old; he has a 7th grade education; his work experience has been principally that of a the-

---

4. In his brief, the Secretary states that the Appeals Council affirmed the examiner because Warren had failed to establish that his severe migraine headaches were such as to preclude his engaging in substantial gainful activity. It is said that if Warren's subjective allegations as to his headaches were accepted at face value, "a finding of disability would be warranted."

5. In Hayes v. Celebrezze, 5 Cir., 311 F. 2d 648, 654, it was said: "The legal standards are now well outlined. For this sort of situation, they have been epitomized by the dual question (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do. And in finding the answer 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify. This was pointed out by Judge Rives in a decision which we have many times approved. 'No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties in some degree of mobility, he is not in the strictest sense unable to perform "any substantial gainful activity."' For like reason once the Claimant makes a substantial showing, the burden resting generally on the Claimant to make out a claim is not to be carried to the logical extreme of forcing him to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations." (Footnotes omitted.)

ater manager and motion picture projectionist; for a year or so he did some radio repair work, but knows nothing of television or modern radio circuits; he said that for a time during World War II he drove a caterpillar tractor but could no longer do heavy work because of a heart condition; and he has no special training or skills of any kind. His limited training, education and experience would seem to bring him within the rule that "[w]hen a claimant's former employment is the only type of work he is capable of performing, then 'former work' means 'any work' and the requirements of the Act are met." Celebrezze v. O'Brient, 5 Cir., 323 F.2d 989, 992.

■■■■ The lack of medically determinable organic cause for the existence of Warren's pain appears to have been one of the significant factors considered by both the examiner and the Appeals Council. However, a defect does not cease to exist merely because it is difficult of proof. Underwood v. Ribicoff, supra. The existence of headaches should not be disregarded because of a technicality. Bramlett v. Ribicoff, 4 Cir., 298 F.2d 858. The disability contemplated by the Act is not restricted to that which is subject of proof by laboratory findings. Page v. Celebrezze, 5 Cir., 311 F.2d 757; Hayes v. Celebrezze, supra; Butler v. Flemming, supra. In Page v. Celebrezze, supra, 311 F.2d at pages 762–763, it is said:

> "This notion that pain must be endured, that pain, no matter how severe or overpowering, is not disabling unless it will 'substantially aggravate' a condition is 'contrary to the standard announced in' cases from this and other Circuits since 'the purpose of much social security legislation' including this Act, 'is to ameliorate some of these rigors that life imposes.' Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, 595; Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648.
>
> \* \* \* \* \* \*
>
> "In rejecting the idea that pain genuinely held, felt and experienced has

to be substantiated objectively to satisfy the statutory standard of a 'medically determinable physical or mental impairment,' we have just recently said: 'But modern medicine is neither so scientific nor so helpless today that it either does, or must, evaluate only objective factors.' Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648."

■■■ On the basis of the medical evidence submitted tending to establish Warren's disability and the lack of contrary medical evidence, together with the uncontradicted evidence of continuing severe migraine headaches, the Secretary's decision was not supported by substantial evidence.

Affirmed.