**John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,**

v.

**Ellice C. BRIAN, Appellee.**

**No. 8342.**

United States Court of Appeals Tenth Circuit.

Nov. 29, 1966.

David L. Rose, Washington, D. C. (John W. Douglas, Washington, D. C., Bruce Green, Muskogee, Okl., Harvey L. Zuckman, Washington, D. C., with him on brief), for appellant.

Earl P. Enos, Duncan, Okl., for appellee.

Before MURRAH, Chief Judge, and LEWIS, BREITENSTEIN, HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

We reheard this case en banc to resolve the seeming conflict between Dvorak v. Celebrezze, 10 Cir., 345 F.2d 894, and Haley v. Celebrezze, 10 Cir., 351 F.2d 516, on the constantly recurring question whether a claimant for social security benefits is "under disability", i. e. unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C. §§ 416(i) (1) (A), 423(c) (2).

After remand by the District Court for further "neurological and orthopedic findings", the Appeals Council acting for the Secretary again denied the claimed benefits. Denial was based upon medical

and psychiatric reports dating from October, 1955, thru 1963, and upon the testimony of a vocational consultant who, without having interviewed the claimant but making reference to a dictionary of "occupational titles" expressed the view that under the assumed facts of record the claimant could engage in enumerated light sedentary occupations requiring minimal entry training; that these enumerated occupations would be consistent with his age, educational background, residual capacity and work experience.

■ Since this case was submitted, we have again recognized that "Congress has delegated to the Secretary the duty of administering the Act and making factual determinations and conclusions within the guidelines set out in the statute" and that "the findings of fact of the Secretary and inferences drawn therefrom are not to be disturbed by a reviewing court if there is substantial evidence to support them." Gardner v. Bishop, 10 Cir., 362 F.2d 917; see also Johnson v. Gardner, 10 Cir., 368 F.2d 909; Celebrezze v. Warren, 10 Cir., 339 F.2d 833, construing 42 U.S.C. § 405(g); Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The Secretary is, to be sure, empowered to construe and interpret the provisions of the statutory scheme he administers, i. e. see Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616; United States v. Southwest Potash Corp., 10 Cir., 352 F. 2d 113. But, reviewing courts are also charged with the duty to construe legislation in the light of ascertained Congressional policy. "[They] are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839.

In reversing the Secretary the trial court considered only medical testimony contemporaneous with the claimed period of disability, i. e. September 15, 1959, until March, 1963. On the basis of this medical testimony and considering the claimant's age, education, work experience and physical impairment, the court concluded that the claimant was unable to engage in any substantial gainful activity during the claiming period. In arriving at its decision the trial court interpreted the statutory term "any substantial gainful activity" to mean "what is reasonably possible, not what is conceivable"—that "a theoretical ability to so engage is not enough if no reasonable opportunity is available." The court observed that the claimant was 58 years old with an eighth grade education and a work experience limited to farm work, oil well servicing, tank welding and car parts man; that he had no special training or skills of any kind and that his limited education and work experience brought him within the rule that "When a claimant's former employment is the only type of work he is capable of performing, then 'former work' means 'any work' and the requirements of the Act are met." Celebrezze v. O'Brient, 5 Cir., 323 F.2d 989, 992.

Although the court did not reject the testimony of the consultant concerning the availability of suitable employment, it did take the view that claimant was not "required by the use of a catalog of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment." And see Butler v. Flemming, 5 Cir., 288 F.2d 591; Underwood v. Ribicoff, 4 Cir., 298 F.2d 850; Hayes v. Celebrezze, 5 Cir., 311 F.2d 648.

■ We followed the same case law to arrive at the same conclusions in Celebrezze v. Warren, supra, and epitomized the rule gleaned from the cited cases as clearly establishing that "in determining whether a particular applicant is unable to engage in any substantial gainful activity, i. e. what he can do and what is available to him to do, consideration must be given to his age, education, training, experience and mental and physical capabilities." And, following established case law, we rejected the notion that "pain must be endured" and that "no

matter how severe or overpowering, it is not disabling." We adopted Judge Brown's language for the Fifth Circuit in Butler v. Flemming, supra, 288 F.2d 595, in which he said "Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act." Cf. Johnson v. Gardner, supra.

Judge Breitenstein, speaking for this court in Dvorak v. Celebrezze, supra, apparently took a different philosophical view of the effect of pain on the ability to engage in gainful activity. He recognized that the Act should be liberally construed to ameliorate the rigors of life, but did not think these principles require disability benefits merely upon a showing that "a man cannot work because it hurts"; that while subjective symptoms should be evaluated, consideration must also be given to "credibility, motivation and medical evidence of impairment." Finally, he observed that "although the claimant does not have the burden of negativing every possible job opportunity, the administrative agency has only to produce some evidence from which a finding can be made that the claimant can do some type of work. It does not have the duty of finding a specific employer and a specific job."

It may be that the language in Dvorak was intended to erect a stricter test for determining what a claimant can do and what is available for him to do. Dvorak seems to follow cases from the Eighth Circuit which adopt stricter requirements to make out a case for the claimant based upon the availability of work opportunities. See Celebrezze v. Sutton, 8 Cir., 338 F.2d 417; Celebrezze v. Bolas, 8 Cir., 316 F.2d 498; see also Jones v. Celebrezze, 331 F.2d 226, where the Seventh Circuit categorically stated that the "Secretary did not have the burden of proving availability of * * * employ-

ment opportunities." And see Gee v. Celebrezze, 7 Cir., 355 F.2d 849.

In any event we adhere to the test as blueprinted in Celebrezze v. Warren, supra, as elaborated in Celebrezze v. O'Brient, 5 Cir., 323 F.2d 989; Kerner v. Flemming, 2 Cir., 283 F.2d 916; Butler v. Flemming, supra; Hayes v. Celebrezze, supra; Ray v. Celebrezze, 4 Cir., 340 F.2d 556; Massey v. Celebrezze, 6 Cir., 345 F.2d 146; Underwood v. Ribicoff, 4 Cir., 298 F.2d 850. We think Judge Sobeloff in Cyrus v. Celebrezze, 4 Cir., 341 F.2d 192, expressed what seems to us to be the prevailing and better reasoned view to the effect that "there must be evidence to show the reasonable availability of jobs which this particular claimant is capable of performing." The Fifth Circuit has most recently reaffirmed the test of " 'reasonable availability' of jobs within the geographical areas which the claimant would normally be expected to consider if regularly in the labor market." See Gardner v. Smith, 5th Cir., 368 F.2d 77, quoting and citing Celebrezze v. Kelly, 5 Cir., 331 F.2d 981, 982.

This is not to say that the Secretary has the "duty of finding a specific employer for a specific job." It does mean that "once the claimant has shown inability to perform his usual vocation, the burden falls upon the Secretary to show the [reasonable] availability of suitable positions." Haley v. Celebrezze, supra. This burden is not met by the production of a catalog of the nation's industrial occupations and proof that the claimant would be capable of performing one or more of the enumerated occupations if available. The Secretary must show reasonable availability and the claimant is not required to negative his capacity to do every possible job in the catalog.

Of course, every case must rest upon its particular facts, and it is significant to note that in Dvorak the Secretary found it "reasonable to expect that some suitable employment could be found there [Albuquerque, New Mexico, claimant's

home] were the claimant motivated to seek it." It is also noteworthy that in Gardner v. Bishop, supra, the court affirmed the finding of the Secretary based upon a finding of its examiner that "claimant did not have physical impairments of such severity so as to prevent him from engaging in any substantial gainful activity, or even returning to the type of work in which he had been engaged prior to his alleged disability."

The medical books relied upon for the Secretary's diagnosis in Haley v. Celebrezze, supra, were not ruled out even though they were not first presented to the trial examiner as required by the Secretary's regulations (20 C.F.R. 404.-949), but they were held to be of no probative value due to their general nature and because they did not relate specifically to the individual applicant. Nor was the Dictionary of Occupational Titles ruled out as incompetent, but the court did not consider the publication of any evidentiary value apparently because there was no showing that any of the enumerated occupations were within the capabilities of the claimant and reasonably available to him.

So it is in the present case. The consultant was permitted to testify by reference to the catalog that the claimant was able to perform certain enumerated light sedentary occupations. But, he also testified that the occupations within claimant's capabilities were available in urban areas and that claimant would probably have severe difficulty gaining access to any of them in the Duncan-Lawton, Oklahoma, area where he lived. The consultant also recognized the claimant's problem of gaining access to companies which would be involved in pension plans and insurance plans and that more and

more this is becoming a handicap to the worker in the post 50's and particularly those that have some kind of limitation.[1] Indeed, the Fifth Circuit in Gardner v. Smith, supra, again recognized this availability problem with the observation that disability includes physical or mental impairment which not only prevents one from obtaining a job, but from even being considered for it by reason of hiring practices and policies.

The Placement Interviewer of the Oklahoma State Employment Service in the Claimant's home area testified there were no present job opportunities in that area; that such jobs have been available very infrequently in that area in the past year. There was a total lack of proof of reasonable availability of what the claimant was capable of doing.

■ We think the trial court unduly restricted the relevant medical testimony. Medical testimony bearing on the claimed disability to engage in a gainful activity before or after the critical period is "substantially relevant." See Kerner v. Celebrezze, 2 Cir., 340 F.2d 736. But even so, the medical evidence of record touching claimant's physical impairment shows that he had sustained a fracture of the transverse process of the Lower-5, and that his coccyx had been operatively removed;

a back brace had been recommended in 1958. In 1961 a bone and joint surgeon reported that the claimant had a marked limitation of his lower back and that he was permanently and totally disabled for any work requiring long standing, lifting, walking or squatting. The three doctors who examined him at the request of the Secretary after remand were of like opinion, except they seemed to

---

1. The thinking of the examiner was clearly indicated by the following testimony: "Q. Doctor, let me ask you this: Because I want the record to speak clearly. When you speak of these factors such as age, pension plans and insurance plans, these are limiting factors insofar as the employers willingness to employ the claimant, they do not relate to his residual physical or mental capacity to do the

job? A. No, that's correct. It's according to the type of employment entry which apparently is a significant element. I would have to recognize that this is a reality that the claimant is to face in terms of gaining access, but these are available. If we only show that they are available, they are available. They are available far more nationally than in this immediate locale."

think that the claimant was not properly motivated toward work. But, this testimony is not based upon any medical evidence. The Government's case is simply that he could do light work if he could find it.

■ We agree with the trial court that the Government failed to prove that work within the claimant's capabilities was reasonably available to him. The judgment is affirmed.

BREITENSTEIN, Circuit Judge, with whom LEWIS, Circuit Judge, concurs, (dissenting).

The holding of the majority, as I understand it, is that the denial of benefits must be set aside because the record does not show the availability of employment in the geographic area where the claimant lives. I agree with the Appeals Council that "the incidence of employment in the claimant's immediate area is not the statutory test."

The testimony of the consultant mentioned by the majority was thus summarized by the Examiner:

"He (the witness) believed the claimant would be precluded from activity which would require heavy lifting or involve excessive bending or lifting of any consequence. He did not believe that this would deny the claimant entry to those occupations which would be light, sedentary and would be consistent with his age, educational background, residual capacity and work experience. He stated that he had occupations in mind which claimant could perform such as watchman, security guard and solderer. For bench activity he had in mind assembler of toys, common toys, saw filer, machine sharpener, and woodworking tool assembler. He believed that a spot welder machine operator was possible. He stated that these were occupations in the United States which were readily available since they were frequently in demand in the want ads."

The witness also testified that the claimant would have "severe difficulty" in obtaining employment in the Duncan-Lawton area. He further said that jobs of the type which he had mentioned exist with frequency in the Oklahoma area and referred to the want ads in the Oklahoma City papers.

The statutory definition of disability includes "inability to engage in any substantially gainful activity." See 42 U.S. C. § 416(i) (1). I find nothing in the Social Security Act suggesting a congressional intent to restrict the requirement to work available in the claimant's home community. The legislative history suggests a contrary intent. The House Report on the 1965 amendments to the Act, which did not change the pertinent provision of the definition of disability, emphasized that a claimant must demonstrate inability to perform any substantial and gainful work "regardless of whether or not such work is available to him in the locality in which he lives." See H.R.Rep.No. 213, 89th Cong., 1st Sess., p. 88.

The circuits are split on their treatment of the issue. Compare Celebrezze v. O'Brient, 5 Cir., 323 F.2d 989; Celebrezze v. Sutton, 8 Cir., 338 F.2d 417; and Jones v. Celebrezze, 7 Cir., 331 F.2d 226, with Hodgson v. Celebrezze, 3 Cir., 357 F.2d 750; Hall v. Celebrezze, 4 Cir., 347 F.2d 937; and Massey v. Celebrezze, 6 Cir., 345 F.2d 146. The First Circuit has adopted the view that the government must show that "there is generally available employment of the kind for which he is fit and qualified." See Torres v. Celebrezze, 1 Cir., 349 F.2d 342, 345, and Rodriquez v. Celebrezze, 1 Cir., 349 F.2d 494. In Gee v. Celebrezze, 7 Cir., 355 F.2d 849, 851, certiorari denied sub nom. Gee v. Gardner, 385 U.S. 856, 87 S.Ct. 98, 17 L.Ed.2d 83, the Court held that the Secretary was not required to show that employment opportunities were "presently available" to a claimant.

The effect of the majority holding is to make the Social Security Act an unemployment compensation act—at least for some individuals in some non-urban areas. In my opinion Congress had no such intent. Substantial evidence sus-

tains the finding of the Appeals Council that the claimant "has the capacity to perform substantial gainful activity as found within our economy." An expert testified as to the existence within the Oklahoma area of work which the claimant could do. This is enough. The Secretary is not required to find a job for him. I would reverse the district court and affirm the order denying the claimed benefits.