George D. JOHNSON, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. W–3431.

United States District Court,
D. Kansas.

March 18, 1970.

James P. Johnston, of Sowers, Sowers, Carson & Johnston, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan., for defendant.

## DECISON AND ORDER

WESLEY E. BROWN, District Judge.

This action for review of a second final order of the Secretary of Health, Education and Welfare under 42 U.S.C. § 405(g), denying claimant's application for disability benefits, is before the Court on cross-motions for summary judgment. We have ruled that plaintiff, Johnson's Second Petition for Review is " * * * considered as a motion for further judicial review of the evidentiary record in the captioned case."

Johnson originally filed his application for disability benefits under the Social Security Act on May 1, 1963, in which he described his impairment as "unable to stand on feet and can hardly get around because of callouses caused by club feet." His application was denied and the case came before this Court on a petition for review in June, 1965. In March, 1966 we affirmed the findings of the Secretary denying disability payments and Johnson appealed.

The United States Court of Appeals for the Tenth Circuit reversed the decision of this Court and remanded the case to this Court with directions to remand the same to the Secretary for a rehearing in conformity with their findings. See Johnson v. Gardner, 368 F.2d 909 (10th Cir. 1966). The Circuit Court had determined that the testimony of one Bentley A. Barnabas had been over-emphasized by this Court. Mr. Barnabas holds a M.A. degree in industrial psychology and is a vocational consultant expert. He had testified concerning the use by Johnson of sedatives for reducing his pain at the evidentiary hearing on February 8, 1965. The Circuit Court felt that such testimony by a person untrained in medicine and its effect upon the body was not entitled to and should not receive very much weight. The plaintiff had testified that his pain had increased over a period of time and had become so severe that he could no longer engage in his junk collecting business. In July of 1963, a physician, Dr. Lance, concluded that plaintiff was not employable and that he believed this to be a "permanent condition." This conclusion of Dr. Lance differed from a prior finding that he reached in 1960 when he found plaintiff could be employed if standing and walking were at a minimum. The more recent findings of Dr. Lance supported plaintiff's contention of an increase in the amount of pain he suffered. Two other medical reports on plaintiff considered by the hearing examiner were made in 1958 and 1959. The Circuit Court reasoned that in view of plaintiff's claim of increased pain, only Dr. Lance's report of 1963 was, in point of time, close enough to the examiner's hearing (February 8, 1965) to be of much validity. And that report's finding of disability was contradicted only by the testimony of Mr. Barnabas. The Circuit Court determined that Mr. Barnabas' testimony concerning plaintiff's pain and the use of sedatives therefore did not constitute "substantial evidence" to support the findings of the Secretary, since Mr. Barnabas was medically unqualified to testify in that regard. The Circuit Court held that,

"considering the views we have expressed and 'on the basis of the medi-

cal evidence submitted tending to establish [appellant's] disability and the lack of contrary medical evidence * * the Secretary's decision was not supported by substantial evidence.' Celebrezze v. Warren, 10th Cir., 339 F.2d 833, 838." See Johnson v. Gardner, supra, at 914.

Additional evidence was received on June 12, 1967 and on June 26, 1967 in conformity with the Circuit Court's opinion, September 20, 1967, the Hearing Examiner entered his Order denying disability benefits to Johnson [Trans. Pp. 160–179], and his decision was adopted by the Appeals Council on October 31, 1967 [Trans. Pp. 157–158].

In our Memorandum of Decision of October 8, 1968 [Dkt. #36], we determined that the record generally supported the Secretary's findings that Johnson was employable. We need not set out again the Circuit Court's summary and our determination after remand and rehearing of its conclusions contained in our Memorandum of Decision. Except as here noted, we adhere to our conclusions of fact and law contained therein. Johnson had claimed poor eyesight and had filed a motion for an eye examination which had never been ruled upon by the Secretary. We remanded the matter for a determination of Johnson's eye claims. The report of the Ophthalmologist, Dr. George F. Gsell, was received into the record on March 20, 1969 [Trans. Pp. 363–366]. After reviewing the results of the eye examination the hearing examiner concluded that:

"The claimant presently has normal vision in his left eye and the vision on his right eye is limited to hand motion in the temporal field; however, it is the further finding of the Hearing Examiner that with proper lenses the claimant is able to do most jobs requiring the use of his eyes."

He further determined that plaintiff is not entitled to a period of disability or to disability insurance benefits. [Trans. P. 350]. April 28, 1969 the Appeals Council adopted the Hearing Examiner's recommended decision of March 28, 1969.

[Trans. Pp. 343, 344]. Thereafter Johnson filed this petition for review and the matter is now before this Court on cross motions for summary judgment.

The additional medical evidence concerning Johnson's eyesight and its possible effect upon his ability to obtain employment during the critical period does not alter our prior determination on October 8, 1969 that the evidence adduced would require us to support a finding that Johnson was employable. Following the eye examination of plaintiff, Dr. Gsell concluded that,

"Examination, then, on this date shows that Mr. Johnson has an excellent left eye, that he has a greater reduced vision in his right eye on the basis of a primary optic atrophy and the appearance of the disc is consistent with the history of the injury he had at the age of five.

"With proper glasses, there is no reason why Mr. Johnson cannot do most jobs requiring the use of his eyes. It is my feeling that a person with good vision in only one eye should probably not use moving machinery such as drill presses or band saws which require rather accurate judgment of distance in close." [Trans. P. 364].

The only type of employment Dr. Gsell suggests that Johnson may be unable to perform because of the condition of his eyes is the operation of moving machinery which requires accurate judgment of distance in close. None of the jobs discussed by Dr. Sherman, the psychologist and vocational expert, as suitable for and available to plaintiff in 1963 involved the operation of such moving machinery.

We have recently had occasion to review congressional and judicial fiats concerning the "substantial evidence" rule as applied to the Secretary's determination of a claimant's rights under the Social Security Act. [See Dean v. Robert Finch, Secretary, No. W–4104, U.S. D.C. Kansas, October 9, 1969, Unreported].

The sole issue for this Court's determination is whether there is "sub-

stantial evidence" to support the Secretary's decision that plaintiff was not under such disability that he was unable to engage in any "substantial gainful activity" during the effective period of his insured status [42 U.S.C. § 405(g)]. "Substantial evidence" has been defined as such " 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion' ". Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966); and

> "Substantial evidence means evidence sufficient to justify a refusal to direct a verdict in a jury case against a party having the burden of proof." [See Haley v. Celebrezze, (10th Cir. 1965) 351 F.2d 516, 517.]

■ In determining whether a particular claimant, who seeks disability benefits under the Act, is unable to engage in any "substantial gainful activity", the Court must consider what he can do, what is available for him to do, and consideration must be given to the person's age, education, training, experience and mental and physical capabilities. [42 U.S.C. § 423(d)]. Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966); Kirby v. Gardner, 369 F.2d 302, 304 (10th Cir. 1966). The following is a definition of "substantial gainful activity" as defined in 20 C.F.R. § 404.1532(b):

> "Substantial gainful activity refers to work activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work

activity of an individual may be less, or less responsible, or less gainful than that in which he was engaged before the onset of his impairment."

Prior to amendment in 1965, "disability" was defined in §§ 416(i) (1) and 423(c) (2) 42 U.S.C. as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *" Section 303(a) of Public L. 89–97, 79 Stat. 286 (the 1965 Social Security Act amendments) liberalized the provisions of the Act by requiring only that the impairment be "expected to last for a continuous period of not less than 12 months * * *" Although the 1965 amendment altered the length of time that the disability must endure, the physical or mental impairment necessary to come within the Act remained the same.

In 1968, Congress again amended the Act, setting out strict guidelines for determination of disability. Section 158 (b) of Pub.L. 90–248, the "Social Security Amendments of 1967," [approved January 2, 1968; 42 U.S.C. § 423].

The definition of "disability" now reads: [§ 423(d)]

> "(2) * * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work *but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he could be hired if he applied for work.* For purpose, of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such

individual lives or in several regions of the country. [Emphasis supplied.]

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■ The burden of proving "disability" by acceptable evidence rests with plaintiff. Section 158(b) of Pub.L. 90–248 [42 U.S.C. § 423(d) (5)] provides:

"An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The 1967 amendments are applicable to plaintiff's claim. Section 158(e) of Pub. L. 90–248 provides:

"The amendments made by this section shall be effective with respect to applications for disability insurance benefits under Section 223 of the Social Security Act, and for disability determination under Section 216(i) of such Act, filed—

(1) in or after the month in which this Act is enacted, (January 1968), or

(2) *before the month in which this Act is enacted if the applicant has not died before such month and if—*

(A) *notice of the final decision* of the Secretary of Health, Education, and Welfare *has not been given to the applicant before such month; or*

(B) the notice referred to in subparagraph (A) has been so given before such month but *a civil action with respect to such final decision is commenced under section 205(g) of the Social Security Act . . . and the decision in such civil action has not become final before such month.*" [Emphasis supplied.]

Prior to this new legislation, several courts had liberalized the concept of disability status in various ways, some by consideration of the probability of the claimants' *actually* obtaining work, in view of employment policies of prospective employers. [e. g. Sayers v. Gardner, 380 F.2d 940 (6th Cir. 1967); Tigner v. Gardner, 356 F.2d 647, 651 (5th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541, 546 (4th Cir. 1964); Kirby v. Gardner, 369 F.2d 302, 305 (10th Cir. 1966); Gardner v. Brian, 369 F.2d 443, 446 (10th Cir. 1966) and dissent J. Breitenstein at p. 448. In his dissent in Gardner v. Brian, *supra* at 448 Judge Breitenstein expressed concern with the majority holding that there must be evidence to show the reasonable availability of jobs which a particular claimant is capable of performing in the geographic area where the claimant lives. The Judge noted that "The effect of the majority holding is to make the Social Security Act an unemployment compensation act—at least for some individuals in some non-urban areas. In my opinion Congress had no such intent."

The legislative history of the 1967 amendments makes very clear the fact that Congress was concerned because the courts were being too liberal in finding disability, thereby jeopardizing the financial stability of the system.[1] Flake v. Gardner, 399 F.2d 532, 539 (9th Cir. 1968). The following comment on the definition of "disability" appears in Senate Report No. 744, 2 U.S.Code Cong. & Adm.News (1967) p. 2834, quotes infra, at pp. 2880–2883:

"The committee recognizes and shares the concern expressed by the Committee on Ways and Means regarding the way this definition has been interpreted by the courts and the effects their interpretations have had and might have in the future on the administration of the disability program by the Social Security Adminis-

---

1. The increase in disability payments was also attributable to: a) greater knowledge of available protection; b) improved methods of developing evidence of disability; and c) more effective ways of assessing impact of disability on ability to work. [p. 2881.]

tration. \* \* \* The Committee therefore includes in its bill more precise guidelines that are to be used in determining the degree of disability which must exist in order to qualify for disability insurance benefits." [p. 2880.]

In finding that the original concept of the "disabled worker" had been changed through court interpretations, the Report specifically noted cases which ruled that " 'once the claimant has shown inability to perform his usual vocation, the burden falls upon the Secretary to show the reasonable availability of suitable positions' " and that " 'disability includes physical or mental impairment which not only prevents one from obtaining a job, but from even being considered for it by reason of hiring practices and policies.' " When asked about the court decisions, the Department summarized developments in the courts which: a) put the burden of proof on the government to identify jobs for which the claimant might have a reasonable opportunity to be hired—that is, giving weight to the hiring practices of employers; b) a narrowing of the geographic area in which the jobs must exist; c) liberalization of the kind of medical evidence necessary to establish disability; and d) new definitions of the term "substantial gainful activity". The Report then noted:

"The committee concurs with the statement of the Committee on Ways and Means instructing the Social Security Administration to report immediately to the Congress on future trends of judicial interpretation of this nature. As a remedy for the situation which has developed, the committee's bill would provide guidelines to re-emphasize the predominant importance of medical factors in the disability determination." [p. 2882.]

In summarizing the provisions of the amendments, the Report continued at pp. 2882–2883:

"The original provision was designed to provide disability insurance benefits to workers who are so severe-ly disabled that they are unable to engage in any substantial gainful activity. The bill would provide that such an individual would be disabled only if it is shown that he has a severe medically determinable physical or mental impairment or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that *if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability regardless of whether he would be hired to do such work.* It is not intended, however, that a type of job which exists only in very limited numbers or in relatively few geographic locations would be considered as existing in the national economy. *While such factors as whether the work he could do exists in his local area, or whether there are job openings, or whether he would or would not actually be hired may be pertinent in relation to other forms of protection, they may not be used as a basis for finding an individual to be disabled under this definition.*

\* \* \* \* \* \*

"The impairment which is the basis for the disability must result from anatomical, physiological, or psychological abnormalities which can be shown to exist through the use of medically acceptable clinical and laboratory diagnostic techniques. *Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions.*

\* \* \* \* \* \*

"Finally, the bill would provide that the individual must submit such medical and other evidence that he meets the preceding requirements as the Secretary may require; if he fails to do so, he may be found not to be under a disability." [Emphasis supplied.]

■ Upon this record, it appears that there is no genuine dispute about any of the underlying facts themselves, or as to the fact that Johnson suffers constant pain in his feet and legs when he is on his feet. It is also possible that he can no longer engage in his previous work of junk collecting. However, all of the medical evidence in this case supports the conclusion that he should not suffer from pain while he is sitting, and that he therefore could engage in sedentary type employment for which he is qualified. While it may be true that he has not before performed clerical work, the evidence in this case before the Court is that he has the necessary intelligence (his I.Q. is reported to be 130), and a sufficient educational background all of which the Secretary found showed Johnson was and is capable of doing such work. The only evidence that Johnson is not qualified for such work is found in his testimony [Trans. P. 262], and he also testified that he could not complete his vocational rehabilitation training in accounting because he was frustrated by pain in his feet. [Trans. P. 256]. Johnson has not met his burden of proof by supplying adequate "medical and other evidence" of the existence of disability as defined by the Act. [42 U.S.C. § 423 (d)]. There is no question but that there is "substantial evidence" as previously defined, to support the Secretary's determination that Johnson was not under such disability that he was unable to engage in any "substantial gainful activity" during the critical period of on or before August 1, 1963.

■ This Court further finds that in the event that the United States Court of Appeals for the Tenth Circuit adheres to its prior ruling in Gardner v. Brian,

369 F.2d 443 (10th Cir. 1966) that "once the claimant has shown inability to perform his usual vocation, the burden falls upon the Secretary to show the [reasonable] availability of suitable positions", the evidence in the instant case satisfies such a requirement. However, in light of the legislative history of the 1967 amendments to the Act and the expression of the congressional guidelines as we understand them the Secretary is not required to make a showing of "[reasonable] availability of suitable positions". Johnson's contentions may be "pertinent in relation to other forms of protection," but they cannot overcome the Secretary's conclusions supported "by clinical or laboratory findings or other medically acceptable evidence." [Senate Report #744, Pp. 2882–2883, supra].

The Secretary's finding that plaintiff was not disabled from engaging in substantial gainful employment will be affirmed and his motion for summary judgment sustained. [42 U.S.C. § 405(g)]; Jones v. Finch, 416 F.2d 89 (10th Cir. 1969).

It is ordered that defendant's Motion for Summary Judgment be Sustained, and that plaintiff's Motion for Summary Judgment be Overruled.