**John E. GARRETT, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE,
Defendant.**

**Civ. A. No. W–4230.**

United States District Court,
D. Kansas.

June 23, 1970.

---

16. Defendant's Exhibit "C".

Edmond L. Kinch, of Ratner, Mattox, Ratner, Ratner & Barnes, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Bernard V. Brost, Asst. U. S. Atty., Wichita, Kan., for defendant.

## DECISION AND ORDER

WESLEY E. BROWN, District Judge.

This action for review of the final order of the Secretary of Health, Education and Welfare, denying claimant's application for disability benefits, is before the Court on cross-motions for summary judgment.

John E. Garrett [Garrett] filed his third application for disability benefits under the Social Security Act on February 23, 1968, alleging inability to work from February 1, 1968 due to a "back injury—right eye blind from accident". The application was initially denied, and upon Garrett's request, a hearing was held on June 4, 1969, at which time he appeared with his attorney, Edmond Kinch. Garrett meets the earning requirement for disability purposes until September 30, 1972.

On June 19, 1969 the Hearing Examiner rendered his decision, finding that Garrett was not entitled to the establishment of a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, based on his application of February 23, 1968. [Tr. 9–19]. Pursuant to a request by Garrett for review of the hearing examiner's action, the Appeals Council reviewed his decision and concluded that his determination was correct. Accordingly, the hearing examiner's decision now stands as the final decision of the Secretary in the instant action.

The evidence which the hearing examiner utilized in reaching his determination that Garrett was not disabled as defined by the Act is presently before the Court and may be summarized as follows:

At the hearing on June 4, 1969, Garrett testified that he was born February 23, 1919 in Conway County, Arkansas. At that time he resided in Wichita, Kansas with his wife and five children. He completed the eighth grade in school, and has no vocational training of any kind. His last employment was at the YWCA where he performed custodial work. He worked for the YWCA from September 22, 1964 to November of 1968 at which time his salary was $150 a month. He claimed that from February of 1968 until his job was terminated, his wife, children and a friend had to help him in his work because he had recently been ill and could no longer do the work. He claimed he left that job because the mopping and waxing were too difficult for him. Prior to working for the YWCA Garrett worked for Silver and Sons for approximately nineteen years. His employer was a metal processing junk dealer, and Garrett was a crane operator, truck driver and common laborer. He was terminated following an injury he received while working. From September of 1967 to the first of February of 1968 he also drove a school bus for which he grossed one-hundred dollars a month. He allegedly gave up driving the school bus because such activity caused pain in his back.

Although Garrett mentioned in his application for disability payments the blindness in his one eye a factor in his inability to obtain employment, he testified that his eye did not keep him from working. The eye was injured in an automobile accident in 1936. Garrett stated that he first injured his back on February 17, 1965 while loading aluminum bundles off the ground onto a flatbed truck. He was hospitalized twice as a result of the injury, and although he had no surgery on his back, he was placed in traction both times. Garrett considers Dr. Knapp to be the company doctor who initially treated him, and Dr.

Goodpasture as his family doctor. He was told that he had an injury to a disc in his back. Garrett claims that if he sits for long periods of time he experiences pain in his back. This pain is reduced to some extent by walking or by lying in bed with boards under his mattress. He allegedly cannot do any heavy lifting, and walking long distances bothers his back. He is taking pain and relaxation medication which affords him some relief. He also wears back supports consisting of a wide belt and a girdle.

During the day Garrett helps his wife with her housework, and then he usually drives his car approximately eighteen blocks to the grocery store. He stated he is unable to drive long distances because he cannot sit too long. He is able to bathe, dress, feed and shave himself without help.

Garrett received a Workmen's Compensation award on January 8, 1968 for temporary total disability at the rate of forty-two dollars a week for a period not to exceed four hundred and fifteen weeks commencing February 24, 1965 [Tr. 128–132]. He has never drawn unemployment compensation, but he and his wife receive two hundred and four dollars a month in welfare payments in addition to commodities.

When working for the YWCA Mr. Garrett worked approximately 2½ hours per day, five days a week. He set up tables and chairs for meetings, and then cleaned the rooms after the meetings concluded. He also did general maintenance work for the entire building which included sweeping, mopping and waxing the floors. The work was light in comparison with the work he had previously done for Silver and Sons.

Garrett testified that he broke a vertebra in his neck in 1953. He was off work for six months, but experienced little difficulty with his neck when he returned. He suffered a sprain of the lumbar vertebra in 1962, but was able to continue to work for Silver and Sons. Following his accident in February of 1965, Garrett attempted to return to work in April of 1965, but he was unable to perform the required work because of severe pain in his back. Operation of the crane had involved moving levers with his hands and feet and moving heavy outriggers into place. He operated the crane while sitting, and he felt that he would no longer be able to perform such work because of the large amount of shaking and jerking experienced inside of the crane. When driving the truck, he first would load it with steel, aluminum and batteries. His work as a common laborer involved heavy work lifting iron and steel. He claims he can do no lifting, cannot bend over and he experiences dizzy spells.

Garrett stated that since the injury to his back in 1965 he has applied for work in a Safeway Store and a "plastic place", but he was refused work because of his back injury. They feared he might reinjure his back. The Safeway job for which he applied was of a custodial nature.

A review of medical evidence prior to the filing of Garrett's present application for disability benefits on February 23, 1968, may be found in the hearing examiner's report. [Tr. 13–16.]

Garrett was seen by Dr. Eugene E. Kaufman on June 7, 1968 at the request of Mr. Lee Meador, a workmen's compensation examiner [Tr. 200]. Following his examination he concluded:

"It is my opinion that Mr. Garrett has an unstable low back. I think that as far as Workman's Compensation impairment rating is concerned I would think that he is approximately the same as I previously gave you on August 5, 1967.

Again I think that if his symptoms become severe he may require surgical intervention. However, he has had symptoms and has been hospitalized for something that sounds like it may have been at least an attack of angina and think that probably surgery should be avoided if possible."

In connection with his present claim for disability benefits, in a medical telephone report, Dr. Willard C. Goodpasture stated that Garrett was admitted to St. Francis Hospital on February 2, 1968 complaining of pain in his chest. He was examined by Dr. Louellen who cared for him until he was discharged on February 7, 1968 with an indefinite diagnosis of a possible pericarditis at that time. He was last examined on August 13, 1968 and his heart was in regular rhythm, his blood pressure normal, his chest clear, and had no trouble breathing. Dr. Goodpasture said that Garrett does have a weak back. [Tr. 201]

At the request of Mrs. S. A. Remer, a disability examiner, Garrett was seen at Bethel Clinic in Newton, Kansas on September 19, 1968 by Dr. M. A. Claassen for evaluation of back and right leg pain. [Tr. 202–204] Dr. Claassen summarized his findings as follows:

"To summarize, this is a 47-year-old male with a three year history of back pain, which prevents him from doing any but the lightest type of work. His symptoms do seem to be somewhat exaggerated in certain positions, but I believe that he definitely does have some limitation of back motion. The neurological examination is entirely within normal limits, with the exception that subjectively there is a diminution of sensation below the right knee which does not follow a dermatomal pattern.

"It is my impression that this patient does have a mild degenerative arthritis, but I am not sure that the findings adequately explain why he has so much pain."

In a report submitted by Dr. W. C. Goodpasture, [Tr. 205–208] concerning an examination of Garrett on December 18, 1968 he found him to be normal but for the use of his back. He had trouble getting up from a prone position, his straight leg raising was limited by 30% in his right leg and by 20% in his left leg and he had discomfort in the back-lumbosacral area.

Dr. Goodpasture's diagnosis at that time was "Lumbo-sacral strain-disc syndrome chronic". In a prior letter of November 19, 1968, [Tr. 216], Dr. Goodpasture stated,

"Mr. John Garrett is still under my observation because of a lame back.

"It is my opinion that he will not be better and at best can remain in an endurable state by carefully limiting his bending and stooping."

In a letter report written January 29, 1969 Dr. C. H. Rhoden reported his findings of a medical examination of Garrett. [Tr. 210–212]. He observed that Garrett could bend only about 30° forward and was limited because of pain which occurred in the right low back area. He concluded,

"Impression: 1. Low back trouble, etiology undetermined. 2. History of some sort of pericarditis. At the present time he has no signs of organic heart disease and no symptoms that are referrable to his heart.

Conclusion. No heart disease found, not disabled because of heart disease. He claims to be disabled from low back trouble. To have this problem evaluated he should be seen by an orthopedic physician."

After reviewing all of the medical evidence concerning Garrett since he filed his first claim for disability benefits in 1965 through those examinations made pursuant to his latest claim for disability payments, the hearing examiner concluded [Tr. 17–18]:

"Based upon all of the medical evidence in this case, it is the opinion of this Hearing Examiner that although the claimant may have some back pain and limitation of motion, he does not have any severe impairment as shown by anatomical or physiological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. Generally speaking, his neurological examinations have been within normal limits. X-ray examination and myelographic studies failed to reveal

what is commonly termed a protruded intervertebral disc. At the most, it appears that he has a mild case of degenerative arthritis involving his lumbar spine. Two different orthopedic specialists believe that the claimant's symptoms were exaggerated.

"This Hearing Examiner further believes that claimant does not have a serious impairment due to his alleged back condition on the basis that following termination of his work at the junkyard (undoubtedly hard manual labor), he worked until December of 1968 as a maintenance man at the YWCA in Wichita, Kansas, and during the period September of 1967 to February 1968, he had a second job consisting of driving a school bus."

\*    \*    \*    \*    \*    \*

"Based upon all the evidence of record, it is the opinion of this Hearing Examiner that the claimant in this case does not have one or more impairments of such severity as to prevent him from engaging in work of driving a truck or a bus or engaging in maintenance work, which types of work he has performed subsequent to the injury to his back in February of 1965. Therefore, the claimant is not entitled to have a period of disability established or to receive disability insurance benefits under the Social Security Act."

Our scope of review of the final order of the Secretary is quite limited. The sole issue for this Court's determination is whether there is "substantial evidence" to support the Secretary's decision that plaintiff was not under such disability that he was unable to engage in any "substantial gainful activity" during the effective period of his insured status. [42 U.S.C. § 405(g)].

We have reviewed congressional and judicial fiats concerning the "substantial evidence" rule as applied to the Secretary's determination of a claimant's rights under the Social Security Act. [See Johnson v. Finch, 310 F.Supp. 1235 (D. Kan.1970); Dean v. Robert Finch, Secretary, No. W–4104, U.S.D.C. Kansas, October 9, 1969, Unreported.]

"Substantial evidence" has been defined as such " 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion' ". Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966);

> "Substantial evidence means evidence sufficient to justify a refusal to direct a verdict in a jury case against the party having the burden of proof."
> [See Haley v. Celebrezze, (10th Cir. 1965) 351 F.2d 516, 517.]

In determining whether a particular claimant, who seeks disability benefits under the Act, is unable to engage in any "substantial gainful activity", the Court must consider what he can do, what is available for him to do, and consideration must be given to the person's age, education, training, experience and mental and physical capabilities. [42 U.S.C. § 423(d)]. Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966); Kirby v. Gardner, 369 F.2d 302, 304 (10th Cir. 1966). The following is a definition of "substantial gainful activity" as defined in 20 C.F.R. § 404.1532(b):

> "Substantial gainful activity refers to work, activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful than that in which he was en-

gaged before the onset of his impairment."

The definition of "disability" now reads: [42 U.S.C. § 423(d) (1) (A)]:

"Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Section 423(d) goes on to say

"(2) * * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

    *    *    *    *    *    *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The burden of proving "disability" by acceptable evidence rests with the plaintiff. Section 158(b) of Pub.L. 90–248 [42 U.S.C. § 423(d) (5)] provides:

"An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

▮▮ This Court finds it significant that since Garrett filed his first two claims for disability benefits on June 16, 1965 and on March 7, 1966, both of which were premised upon alleged inability to work after February 17, 1965 due to a "back condition", the plaintiff has actively engaged in two different types of employment: a janitor and a school bus driver. He worked over four years as a janitor for the YWCA from September 22, 1964 to November of 1968. Only during the year of 1968 did his wife and family assist him in such work after he had been released from the hospital after a short stay during which time he had complained of chest pain. As a janitor he earned $150 a month. The bus job lasted from September 1967 to February 1, 1968. He earned $100 a month from such employment. Mr. Garrett alleges that he quit both jobs because of pain from his back condition. A review of all medical evidence in the record covering the time from when his first claim was filed to the filing of his present claim does not reveal that his back condition has worsened significantly. We think it proper that the hearing examiner considered Garrett's work activity during times when he had twice alleged that he was disabled and unable to work due to his back condition. The manner in which prior work activity is to be considered is set forth in 20 C.F.R. § 404.1532:

"(a) *In general.* If an individual performed work during any period in which he alleges that he was under a disability as defined in § 404.1501, the work performed may demonstrate that such individual has ability to engage in substantial gainful activity. If the work performed establishes that an individual who is not statutorily blind is able to engage in substantial gainful activity, he is not under a disability * * *."

It is also significant that Garrett applied for two other jobs, but allegedly was refused employment because he had

had the back injury. Apparently, he believed he could do the work. The fact that the employers would not hire him is not controlling. As previously mentioned, 42 U.S.C. § 423(d) (2) provides:

"an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether * * * he would be hired if he applied for work * * *.*" [Emphasis supplied.]

With respect to a claimant's statements that he has such pain that he is unable to work, it has been said:

"We recognize that the intent of the Act is to ameliorate some of the rigors of life and that the Act must be construed liberally. These principles do not require that disability benefits must be awarded whenever there is a subjective showing that a man cannot work because he hurts. Subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. Although the claimant does not have the burden of negativing every possible job opportunity, the administrative agency has only to produce some evidence from which a finding can be made that the claimant can do some type of work. It does not have the duty of finding a specific employer and a specific job." See Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965).

When there is conflicting evidence in the record, we are bound by the following standards:

"The function of review by the Court of the decision of the Secretary is not a trial *de novo*. Hobby v. Hodges, 215 F.2d 754 (10th Cir. 1954); Collins v. Secretary of Health, Education & Welfare, D.C.Ark., 286 F.Supp. 81 (1968).

In such cases the Court does not weigh the evidence for the purpose of determining whether, in its opinion, the claim for benefits should have been granted. As would have been the situation had this Court been, indeed, the actual hearer of the presentation of the facts, the finality afforded administrative findings extends to reasonable inferences from the evidence if a substantial basis for them appears in the record, and where there are conflicts in the evidence, or in the reasonable inferences to be drawn therefrom it is for the Secretary, and not the Court, to resolve them. See Celebrezze v. Sutton, 338 F.2d 417 (8th Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); and Collins v. Secretary of Health, Education & Welfare, *supra*." See Mayhue v. Gardner, 294 F.Supp. 853 (D.Kan.1968), aff'd 416 F.2d 1257 (10th Cir. 1969).

Garrett argues that the Secretary has the burden to show the reasonable availability of suitable positions for which he is qualified. In the event that the United States Court of Appeals for the Tenth Circuit adheres to its prior ruling in Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966) that "once the claimant has shown inability to perform his usual vocation, the burden falls upon the Secretary to show the [reasonable] availability of suitable positions", there is substantial evidence in the instant record to support the hearing examiner's finding that Garrett can perform janitorial work, and that such work is reasonably available to him. However, in light of the legislative history of the 1967 amendments to the Act and the expression of the congressional guidelines as we understand them, the Secretary is not required to make a showing of "[reasonable] availability of suitable positions." [See Johnson v. Finch, 310 F.Supp. 1235 (D.Kan.1970); Dean v. Robert Finch, Secretary, No. W-4104, U.S.D.C. Kansas, October 9, 1969, Unreported.]

Upon this record we find that there is "substantial evidence" as previously defined, to support the Secretary's finding

that Garrett has not been under such disability that he was unable to engage in any "substantial gainful activity" during the period for which he seeks disability benefits.

The Secretary's finding that plaintiff was not disabled from engaging in substantial gainful employment will be affirmed and his motion for summary judgment sustained. [42 U.S.C. § 405 (g)]; Jones v. Finch, 416 F.2d 89 (10th Cir. 1969).

It is ordered that defendant's Motion for Summary Judgment be Sustained, and that plaintiff's Motion for Summary Judgment be Overruled.

It is further ordered that the Clerk enter Judgment in favor of defendant, and against plaintiff, John E. Garrett, affirming the decision of the United States Secretary of the Department of Health, Education and Welfare. The Clerk is further directed to forward a copy of this Decision and Order to the parties herein named.