John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,

v.

Butler O. BISHOP, Appellee.

No. 8390.

United States Court of Appeals Tenth Circuit.

July 1, 1966.

918

Harvey L. Zuckman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Bruce Green, U. S. Atty., and Kathryn H. Baldwin, Atty., Dept. of Justice, on the brief), for appellant.

David K. Petty, McAlester, Okl., for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This action was commenced in the court below by appellee, Bishop, under 42 U.S.C. § 405(g), to review the decision of the appellant, Secretary of Health, Education and Welfare, denying disability insurance benefits under 42 U.S.C. §§ 416(i) and 423(a). The Secretary filed an answer to the complaint and thereafter filed a motion for summary judgment, based upon the pleadings and the transcript of the record of the administrative proceedings. The trial court, in a summary fashion, denied the motion for summary judgment and reversed the decision of the Secretary without giving any reason or basis for such action. The Secretary has appealed from that order.

At the outset, we should comment that, although there is no rule or statute requiring a federal district judge to express his reasons for a decision in this type of case, it is certainly a better judicial practice for him to do so. This is of particular importance in cases where the trial judge reverses the decision of the Secretary, as was done here because we have no other means of knowing the legal basis of the court's decision in such cases.

There are certain well established legal principles applicable to cases

arising from the Social Security Act. First, we must recognize that the Congress has delegated to the Secretary the duty of administering the Act and the making of factual determinations and conclusions within the guidelines set out in the statute. The findings of fact of the Secretary and the inferences drawn therefrom are not to be disturbed by a reviewing court if there is substantial evidence to support them.[1] Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The Supreme Court has also said " * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."[3]

At the hearing before the examiner the claimant testified he was 60 years of age, had a sixth grade education and had worked from the time he was 15 years old until he became disabled; he had never learned a skill or trade and his last employment was in an aircraft plant in California as an inspector; his employment there was terminated in 1960, because of a reduction in the work force and had not sought work since because he did not feel able to work; during 1960 he applied for and received unemployment compensation for a short period of time; and that his lungs were impaired, he had a bowel condition, bronchial difficulty, chronic sinusitis and had pain in his right groin, rectum and chest. At this hearing the medical evidence consisted of reports from five individual doctors and the staff of the University of Oklahoma Medical Center together with the oral testimony of Dr. Louis N. Dakil. The examiner found that the medical reports put into the record revealed thorough medical examinations of the claimant and outweighed the oral testimony of Dr. Dakil. From these reports the examiner denied claimant's application and found that claimant did not have physical impairments of such severity so as to prevent him from engaging in any substantial gainful activity, or even returning to the type of work in which he had been engaged prior to his alleged disability. Claimant's request for review was denied by the Appeals Council and the decision of the hearing examiner became the final decision of the Secretary.

Admittedly, the medical report and the oral testimony of Dr. Dakil appearing in the record, standing alone, makes a strong case for the claimant. The report diagnosed appellee's physical impairments as tuberculosis, emphysema, hypertension, diverticulitis, chronic nephritis and hypertrophical prostate. The report also classified appellee as totally disabled for any type of labor and recommended that he avoid exertion and dampness and that he get rest and maintain a proper diet. The doctor's oral testimony generally supported what he had put into his report.

The other medical evidence in the record, consisting of reports of seven medical examinations of appellant made during the years 1961, 1962 and 1963, contradicts in many important respects the report and oral testimony of Dr. Dakil. There are two reports from Dr. Julius LaCroix. His first report diagnosed appellant's condition as "possible malignancy of G. I. tract, chronic sinusitis, chronic prostatitis" and stated that claimant was unable to engage in manual labor because of back pain and instability. LaCroix's second report made in 1963 stated claimant's back and extremities were within normal limits, blood pressure was 120/80, regular heart beat rate and rhythm, absence of heart murmurs, no enlargement of cardiac muscle, lungs were clear to auscultation and percussion, rectal examination revealed be-

---

1. Celebrezze v. Warren, 10 Cir., 339 F. 2d 833.

2. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

3. National Labor Relations Board v. Columbian Enameling & Stamping Co., Inc., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660.

nign prostate hypertrophy, and concluded that claimant had chronic sinusitis and chronic prostatitis with secondary urinary tract infection.

Dr. Henry D. Wolfe examined appellee on April 26, 1961, and reported that his examination failed to reveal any remarkable or outstanding defects and diagnosed the condition as minimal spinal arthritis and gastroenteritis. The first report from the University of Oklahoma Medical Center, dated September 15, 1961, showed an electrocardiogram taken of appellee to be normal, an X-ray of the colon showed diverticulosis of the sigmoid and ascending colon and the diagnosis was chronic bronchitis with early emphysematous changes, chronic prostatitis, hypochondriasis and diverticulosis. A second report from the Medical Center dated April 16, 1962, stated "the impression of the staff at the time of first being seen and also on his last visit was that mainly he is a hypochondriac. They have found nothing on physical examination to warrant his many complaints." The report also stated that the doctors felt claimant was "capable of working but that he does not have any interest in actually doing so."

In a report by Dr. Max A. Glaze, a neuropsychiatrist, on December 5, 1961, it is stated that claimant was correctly oriented, suffered no perceptual disturbances, was not psychotic, the results of the neurological examination were within normal limits, and concluded that claimant had a mild chronic brain syndrome with a neurotic reaction manifested by hypochondroiasis, bodily preoccupation, lack of interest, mild depression and pessimism. The report further concluded that claimant was not completely disabled and recommended he find some type of light work involving little stress or responsibility. The most current report of a medical examination of appellee was one reported by Dr. C. K. Holland on November 8, 1963, and which report

states that claimant did not appear ill. His blood pressure was 120/80, occular fundi revealed no sclerotic changes, ears, nose and throat were normal, no thyroid or lymph node enlargement was observed, the neck was flexible, chest size was normal and breath sounds were normal vilaterally, abdomen and genitalia were normal, rectal examination revealed a normal prostate and no rectal masses, the extremities appeared normal, knee and ankle jerks were active and equal, chest X-rays showed normal heart size and moderate pulmonary emphysema and basilar fibrosis, ventilatory function tests revealed a total vital capacity of 84% of predicted, one second vital capacity of 81% of total and a maximum breathing capacity of 91 litres per minute or 81% of predicted, sputum analysis was made and no sign of tuberculosis was detected and concluded with a diagnosis of mild obstructive emphysema and stated that the claimant had a moderate tolerance for physical work.

▮ We agree with appellee to the extent that from the record it is possible to single out certain parts of the medical testimony and make a good case for the claimant. But we cannot do this. In our review of the record we must look at all of the evidence to determine, as the Congress directed, whether there is substantial evidence in the record to support the decision of the Secretary. That was also the limit of the trial court's authority to review the matter.

▮ The foregoing summary of the medical evidence before the examiner and the Secretary conclusively shows that there is substantial evidence in the record to support the findings and inferences made therefrom. Neither the trial court nor this court is permitted to weigh and evaluate the evidence in the record. It may be that this is exactly what the trial court did in arriving at its judgment. In any event, we believe the trial court erred and its judgment is reversed.