Alma **MAYHUE**, Plaintiff,

v.

John W. **GARDNER**, Secretary of Health, Education & Welfare, Defendant.

Civ. A. No. W–3900.

United States District Court
D. Kansas.

Dec. 17, 1968.

James P. Johnston, Sowers, Sowers, Carson & Johnston, Wichita, Kan., for plaintiff.

Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is an action brought under Title 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education & Welfare denying the establishment of a period of disability and disability benefits to the plaintiff.

The matter is before the Court on the motion of both parties for summary judgment. The single issue presented to the Court is whether the findings of fact, and the inferences drawn therefrom by the Secretary, are supported by substantial evidence. If so, under the statute, the Secretary must be affirmed; if not, he must be reversed.

The secretary determined that the plaintiff failed to prove that on or before September 30, 1961, the date of the last earnings quarter by the plaintiff, she was "disabled" within the meaning of Sections 416(i) (1) and 423(c) (2) of the Act, as amended in 1965. A brief statement of the facts may here be pertinent, although the whole evidence is contained in the transcript of the record before the Court.

Plaintiff's application for benefits, filed March 29, 1966, states that she was born January 12, 1908, and she alleges that she became unable to work in January, 1957, at the age of 49, by reason of:

"1. Arthritis—back, hands and possibly arches.

2. High blood pressure.

3. Shortness of breath and rapid heart beat.

4. Nervous condition.

5. Hard of hearing in L ear."

Plaintiff testified that she has a high school education, plus a few summer courses after high school (Tr. 50–51). She said she has worked briefly as a substitute school teacher (Tr. 51, 58), as a paper sorter for a waste paper company, as a farm hand picking and chopping cotton (Tr. 44), and as a poll worker (Tr. 50, 52, 100). Her most significant work experience (Tr. 43, 99, 130–131) has been as a domestic (from 1946 to 1950) and as a driller and riveter in the sheet metal

assembly department of the Boeing Aircraft Company (from 1951 to 1956, and during parts of 1944–1945).

Plaintiff lives in a two-bedroom house with her husband and daughter. She said they help her with some of the housework. She does the evening cooking, but she said the meals are never elaborate. She testified that using a vacuum sweeper causes shortness of breath and stated that after two hours of housework she becomes tense and nervous (Tr. 45–47, 97).

At her hearing before the Examiner, and in various statements, plaintiff voiced a multiplicity of complaints, including headaches (Tr. 42), shortness of breath (Tr. 46), back pains (Tr. 70), swollen fingers (Tr. 72), knee trouble, trouble with right hip and right foot (Tr. 74), varicose veins in right leg (Tr. 75,), dizzy spells (Tr. 76), a nodule in an old abdominal incision (Tr. 77), tenseness and nervousness (Tr. 97), aching feet, high blood pressure (Tr. 97), goiter, and gallbladder distress (Tr. 98). The record contains medical reports from the Halstead Hospital at Halstead, Kansas, showing that plaintiff was a patient in that hospital for various periods on five occasions, beginning on July 22, 1950, again on August 5, 1952, again on January 2, 1957, on January 20, 1957, and finally, for a three-day period beginning June 9, 1959. The record contains reports from a number of physicians who treated plaintiff at various times from 1959 through part of 1966. To detail the record of the complaints of the patient to her physicians and the physicians' diagnoses and treatment of the plaintiff would contribute little to this opinion, in light of the conclusion the Court has reached, and the presence of the detailed facts in the transcript. Suffice it to say that there is very little of this medical evidence, and the opinion of the physicians based thereon, which would indicate that the physicians considered this plaintiff disabled from some gainful employment beyond a reasonable medical certainty.

The medical evidence, to say the least, is equivocal in many respects and varies from physician to physician, as is often the case. Dr. Welch, for instance, made it clear from his letter (Ex. 12) that he had no idea whether plaintiff was in any way disabled currently. A Dr. Lee stated that at the time plaintiff was being treated by him in February and August of 1961, that she could only engage in gainful employment on a part-time basis, possibly a maximum of three days a week. A Dr. Tocker made no conclusionary statement as to the disability of plaintiff, and a Dr. Russell, who treated the plaintiff intermittently since October 29, 1969, concluded that she had been precluded from gainful employment since 1964, and "this is more from the combination of all the ailments mentioned than any one ailment."

One of the noteworthy things that almost every physician that treated the plaintiff touched on was a bad gallbladder condition and exogenous obesity, for which all the physicians recommended the gallbladder operation and diet by the plaintiff to reduce her obesity. All during the period complained of the plaintiff refrained from having the gallbladder condition corrected by operative procedure, and her battle against "fat" did not bring into being enough will power except on cursory and periodic occasions which, of course, did not alleviate her condition.

It is noteworthy in examining the transcript of the evidence, the Examiner's very meticulous examination of the evidence, and his discussion of the evidence, that he felt that the gallstones and gallbladder condition, and the self-induced obesity, were, in the opinion of most of the physicians, responsible for a great deal of the plaintiff's ails and claims of disability. To support his conclusion from the facts, the Examiner very aptly quoted a statement from the Senate Finance Committee's Report accompanying H. R. No. 6675, in respect to the purpose of the 1965 Amendment, substituting the requirement that a "disability" must have lasted, or be likely to

last, twelve months, in lieu of the pre-1965 Amendment that it be "long lasting and indefinite," as follows:

"An individual who willfully fails to follow such prescribed treatment could not, under such failure, qualify for such benefits."

The Examiner likewise made the statement in his discretion, that:

"The cases are legion and establish that 'an impairment which is presently capable of being classified as remedial cannot meet the requirement that it be of long, continued and indefinite duration.'"

See Bradey v. Ribicoff, 298 F.2d 855 (4 Cir. 1961). Thus, the Examiner believed the evidence of the plaintiff insufficient to establish disability within the statute prior to 1965, and also under the less rigid standards set out in the 1965 Amendment.

What is this Court's function in reviewing the Secretary's findings, as set forth in the Examiner's decision? As indicated previously, the Secretary's decision cannot be disturbed if there is substantial evidence to support his decision. "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" See Gardner v. Bishop, 362 F.2d 917 (10 Cir. 1966); Judge Templar's recent decision in Harkins v. Cohen, 295 F.Supp. 619. Or, as stated in another manner by Judge Hill, in quoting the Supreme Court in Gardner v. Bishop, supra, "[The evidence] must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

■■ The function of review by the Court of the decision of the Secretary is not a trial de novo. Hobby v. Hodges, 215 F.2d 754 (10 Cir. 1954); Collins v. Secretary of Health, Education & Welfare, D.C.Ark., 286 F.Supp. 81 (1968). In such cases the Court does not weigh the evidence for the purpose of determining whether, in its opinion, the claim

for benefits should have been granted. As would have been the situation had this Court been, indeed, the actual hearer of the presentation of the facts, the finality afforded administrative findings extends to reasonable inferences from the evidence if a substantial basis for them appears in the record, and where there are conflicts in the evidence, or in reasonable inferences to be drawn therefrom it is for the Secretary, and not the Court, to resolve them. See Celebrezze v. Sutton, 338 F.2d 417 (8 Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518 (4 Cir. 1962); and Collins v. Secretary of Health, Education & Welfare, supra.

■ Likewise, as in a court of law, determinations as to the credibility of the witnesses and the weight to be given the evidence are for the Secretary, or the Hearing Examiner, as his agent. Easttam v. Secretary of Health, Education & Welfare, 8 Cir., 364 F.2d 509; Foss v. Gardner, 363 F.2d 25 (8 Cir. 1966); and Collins v. Secretary of Health, Education & Welfare, supra.

In connection with credibility, which this Court believes to be an important prerogative of the original finder of fact in making his determination as to the validity of evidence, it is most interesting to note that in addition to his competent and plausible analysis of the medical evidence presented, the Hearing Examiner stated as follows:

"The Hearing Examiner was not impressed with the claimant's veracity as a result of this performance. In appearance the claimant appears to be much younger than her stated age of 59. In fact, she appears to be in her late 40's or early 50's. She is very strongly built though still obese in appearance and this is to be noted in terms of her constant complaints of stomach trouble, pain in the lower abdomen, etc. Also, it is to be noted that the gallbladder is a part of the digestive system and there appeared to be nothing wrong with her digestive system in terms of her better than well nourished condition. Though she kept detailing all of the pains, aches and

headaches that she had, her expression at all times was inappropriately bland giving no evidence of real pain, though the hearing lasted better than two hours and though she stated she has various body pains, her walk and movements of the arms, shoulders and hands were quick and agile, giving no evidence of any restriction. She sat down in a chair and arose easily at the end of the hearing, exhibiting no difficulty in these bodily motions. On occasion she smiled as if she were being amused though she was testifying about some of her pains. She in no way has the appearance of a person who suffers from any illness of any kind."

In the case before the Court, the Hearing Examiner, Laurence Dimsdale, acting for the Secretary, made what he designated the following "Findings of Fact and Conclusions of Law," and "Decision" thereon:

## "FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Though claimant had a number of surgical and other procedures including a pan hysterectomy and incidental medical treatment for upper respiratory infections, etc., these were neither long lasting and indefinite impairments as required by the pre-1965 definition of 'disability' nor is there any evidence to demonstrate that these conditions or any of them lasted for as long as twelve months and did not in fact terminate more than fourteen months prior to the date claimant filed her instant application as required by the definition of 'disability' as amended in 1965.

2. The evidence does establish that claimant has had both an infected gallbladder and gallstones which have required surgery ever since 1957 and that she has continuously refused such surgery. This is a condition which is remediable and under both the pre-1965 definition of 'disability' and under the definition of 'disability' as amended in 1965, this condition does not constitute a 'disability.' The same is true with respect to her exogenous obesity, i. e., it is remediable by reduced intake of food.

3. The evidence fails to establish that many of the current conditions which are first established to have existed when Dr. Russell first examined her in 1964 were in existence when she last met the earnings requirements of the Act.

4. The evidence fails to establish that claimant's impairments prevented her from engaging in substantial gainful activity at any time prior to or on the date she last met the earnings requirements of the Act on September 30, 1961.

5. The claimant was not under a 'disability' as defined in the Act either prior to or after the Social Security Amendments of 1965, at any time on or prior to the date she last met the earnings requirements of the Act on September 30, 1961.

## DECISION

It is the decision of the Hearing Examiner that the claimant based on her instant application is not entitled to a period of disability or to disability insurance benefits under the provisions of sections 216(i) and 223, respectively, of the Social Security Act in effect prior to the Social Security Amendments of 1965 or as amended thereby."

This Court finds that there was sufficient and substantial evidence before the Secretary to sustain his Findings of Fact and Decision thereon, adverse to the claim of the plaintiff here before this Court.

Accordingly, the plaintiff's motion for summary judgment is overruled; and the defendant's motion for summary judgment is sustained. The decision of the Secretary of Health, Education and Welfare in this matter is affirmed.