**Dahlia Lois BROCK, Plaintiff,**

v.

**Robert H. FINCH, United States Secretary of the Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. W-4218.**

United States District Court,
D. Kansas.

June 8, 1970.

Cole & Camp, Winfield, Kan., for plaintiff.

Robert Roth, U. S. Atty., Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan., for defendant.

## DECISION AND ORDER

WESLEY E. BROWN, District Judge.

This action for review of the final order of the Secretary of Health, Education and Welfare, made and entered on July 11, 1969, denying claimant's application for disability benefits, is before the Court on cross motions for summary judgment.

Dahlia Brock filed her application for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq., on November 1, 1967 alleging inability to work from April 23, 1966 due to "arthritis and spinal deterioration, due to car accident". She last met the earnings requirements under the Act on June 30, 1966.

Mrs. Brock filed a request for hearing in which she waived personal appearance before the hearing examiner, and requested a decision on the evidence submitted to him. After reviewing the evidence, the hearing examiner concluded that Mrs. Brock was not "entitled to disability insurance benefits or to a period of disability under Sections 223(a) and 216(i) of the Social Security Act as amended." See 42 U.S.C. §§ 423(a) and 416(i).

The evidence which the hearing examiner utilized in reaching his determination that Mrs. Brock was not disabled as defined by the Act is presently before the Court and may be summarized as follows:

Mrs. Brock was born on March 6, 1923, resides in Arkansas City, Kansas, and has an 11th grade education.

Medical reports by Dr. C. S. Reusch, [Tr. 58, 60,] and Dr. C. D. Snyder, [Tr. 59, 62,] written in 1964, pertain to medical treatment unrelated to Mrs. Brock's alleged disability ailments. Dr. Garland L. Campbell stated that she was last seen in his office in April of 1959 for repair of a prolapsed uterus. Her last visit to his office was in 1962 and he had no knowledge or information of her present status. [Tr. 63–65.]

Dr. Marcus L. Lee prepared a detailed general medical report on Mrs. Brock for the Department of Health, Education and Welfare on November 13, 1967. [Tr. 29–48]. He reviewed her visits to his office since October of 1964. Following an automobile accident on April 23, 1966, she was found to have "advanced osteo arthritis with degenerative disc disease". The patient continued thereafter to complain of back pain which did not respond to skeletal muscle relaxants or general arthritic medications. Dr. Lee further diagnosed that she suffered from hypothyroidism and spastic colitis with menopausal syndrome. He concluded by saying:

"This 44 year old female was getting along well, even though she had no knowledge of the osteo arthritis with degenerative disc disease until the accident in April of 1966. Since this time she has been unable to be free of rather severe pain in the low back radiating down the legs. I have advised her that she is physically unable to work and have given her rehabilitative exercises for the back. Physical therapy has been utilized and there has been no significant amount

of improvement in the back pain. It is my opinion that this patient is permanently disabled due to her back condition." [Tr. 31.]

Dr. Lee later updated his first medical report by submitting a narrative report of Mrs. Brock's treatment since his report of November 13, 1967. [Tr. 70]. Mrs. Brock was seen on many occasions, and she complained of and was treated for pain in her hip and leg, headaches, shoulder pain, black stools, severe pain in the vertebral column and low back pain, clinical edema of both lower extremities, aching of knees and arms, feeling of weakness, back pain aggravated by being on feet and neck pain. He again concluded that Mrs. Brock was unable to work and would continue to be unable to work because of pain in her low back which was not likely to improve. He recommended that she be allowed complete disability under the Social Security Benefits.

Mrs. Brock was examined at the Bethel Clinic in Newton, Kansas on January 23, 1968 by Dr. M. A. Classen, pursuant to request by Jessie M. Zimmerman, a disability examiner. Dr. Classen felt that she exaggerated her symptoms, but he was certain that she had "some disability". [Tr. 53–57.]

A disability determination examination was performed on June 14, 1968 by Dr. Bruce G. Smith in Arkansas City, Kansas. Dr. Smith noted that she "has not been able to work since January of 1967," and that she formerly worked as a waitress and cashier. His final diagnosis consisted of the following: chronic anxiety tension state; osteoarthritis; lumbosacral spine; and degenerative disc disease, L 5–S, asymptomatic. He did not relate these findings to Mrs. Brock's ability to work.

Dr. Alex L. Brown conducted a psychiatric examination of Mrs. Brock on July 16, 1968 at the request of Fred Rinner, a disability examiner. Her then present level of intellectual functioning was somewhat above normal. His diagnosis was "anxiety reaction chronic mild with many psychophysiological manifestations." Dr. Brown recommended that she can perform unskilled labor not requiring much physical stress. [Tr. 80–82.]

Dr. George J. Mastio, performed an operation for cystocele repair on December 1, 1968. Her post-operative course was entirely satisfactory, and Mrs. Brock was discharged on December 8, 1968. [Tr. 89–90.]

Mrs. Brock's contention that she is unable to work is also supported by statements of friends. [Tr. 83, 85.]

During an interview on Novermber 1, 1967 [Tr. 49–52], concerning her claimed disability, Mrs. Brock informed the interviewer that prior to the auto accident she worked the noon and evening shifts as cashier at a downtown cafe. She worked approximately one and one-half hours each shift. Following the accident, she complains of constant pain which is not alleviated to any great extent by the administration of drugs. She worked very briefly at her old job as cashier in late 1966 and early 1967, but stated that she had to quit because her back hurt so badly she couldn't concentrate. Her housework is also limited. A subsequent interview on March 27, 1968 revealed no significant change in Mrs. Brock's condition. [Tr. 66–69.]

■ Our scope of review of the final order of the Secretary is quite limited. The sole issue for this Court's determination is whether there is "substantial evidence" to support the Secretary's decision that plaintiff was not under such disability that she was unable to engage in any "substantial gainful activity" during the effective period of her insured status. [42 U.S.C. § 405(g)].

We have recently had occasion to review congressional and judicial fiats concerning the "substantial evidence" rule as applied to the Secretary's determination of a claimant's rights under the Social Security Act. [See Johnson v. Finch, 310 F.Supp. 1235 (D.Kan. 1970); Dean v. Robert Finch, Secretary,

No. W–4104, U.S.D.C. Kansas, October 9, 1969, Unreported.]

■ "Substantial evidence" has been defined as such " 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion' ". Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966);

"Substantial evidence means evidence sufficient to justify a refusal to direct a verdict in a jury case against a party having the burden of proof." [See Haley v. Celebrezze, (10th Cir. 1965) 351 F.2d 516, 517.]

■ In determining whether a particular claimant, who seeks disability benefits under the Act, is unable to engage in any "substantial gainful activity", the Court must consider what she can do, what is available for her to do, and consideration must be given to the person's age, education, training, experience and mental and physical capabilities. [42 U.S.C. § 423(d)]. Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966); Kirby v. Gardner, 369 F.2d 302, 304 (10th Cir. 1966). The following is a definition of "substantial gainful activity" as defined in 20 C.F.R. § 404.1532(b):

"Substantial gainful activity refers to work activity that is both substantial and gainful. Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful than that in which he was engaged before the onset of his impairment."

The definition of "disability" now reads: [42 U.S.C. § 423(d) (1) (A)]:

"Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Section 423(d) goes on to say

"(2) * * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*     *     *     *     *     *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■ The burden of proving "disability" by acceptable evidence rests with the plaintiff. Section 158(b) of Pub. L. 90–248 [42 U.S.C. § 423(d) (5)] provides:

"An individual shall not be considered to be under a disability unless he furnishes such medical and other evi-

dence of the existence thereof as the Secretary may require."

■ The medical evidence in this case reveals that Mrs. Brock does have pain in her back which primarily is caused by osteo arthritis with degenerative disc disease. Dr. Lee felt that she was physically unable to work, however, such an opinion is not binding on the hearing examiner. The weight to be given to medical opinions is set forth in 20 C.F.R. § 404.1526:

"The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled,' * * * 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments."

Dr. Lee was the only doctor who expressed the opinion that Mrs. Brock was permanently disabled and unable to work. Dr. Classen believed that she had "some disability", but that she also exaggerated her symptoms. He did not describe the effect such disability would have on her ability to work. Neither did Dr. Smith relate his medical findings to her ability to work. Dr. Brown, a psychiatrist, although he was aware of her complaints of pain in her knees and back, concluded that she can perform unskilled labor not requiring much physical stress.

With respect to a claimant's statements that she has such pain that she is unable to work, it has been said:

"We recognize that the intent of the Act is to ameliorate some of the rigors of life and that the Act must be construed liberally. These principles do not require that disability benefits must be awarded whenever there is a subjective showing that a man cannot work because he hurts. Subjective symptoms must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. Although the claimant does not have the burden of negativing every possible job opportunity, the administrative agency has only to produce some evidence from which a finding can be made that the claimant can do some type of work. It does not have the duty of finding a specific employer and a specific job." See Dvorak v. Celebrezze, 354 F.2d 894 (10th Cir. 1965).

■■ When there is conflicting evidence in the record, we are bound by the following standards:

"The function of review by the Court of the decision of the Secretary is not a trial de novo. Hobby v. Hodges, 215 F.2d 754 (10th Cir. 1954); Collins v. Secretary of Health, Education & Welfare, D.C.Ark., 286 F.Supp. 81 (1968). In such cases the Court does not weigh the evidence for the purpose of determining whether, in its opinion, the claim for benefits should have been granted. As would have been the situation had this Court been, indeed, the actual hearer of the presentation of the facts, the finality afforded administrative findings extends to reasonable inferences from the evidence if a substantial basis for them appears in the record, and where there are conflicts in the evidence, or in the reasonable inferences to be drawn therefrom it is for the Secretary, and not the Court, to resolve them. See Celebrezze v. Sutton, 338 F.2d 417 (8th Cir. 1964); Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); and Collins v. Secretary of Health, Education & Welfare, supra." See Mayhue v. Gardner, 294 F.Supp. 853 (D.Kan. 1968), aff'd 416 F.2d 1257 (10th Cir. 1969).

■ Upon this record we find that there is "substantial evidence" as previously defined, to support the Secretary's finding that Mrs. Brock was not under such disability that she was unable to engage in any "substantial gainful activity" during the critical period of on or before June 30, 1966.

The Secretary's finding that plaintiff was not disabled from engaging in substantial gainful employment will be affirmed and his motion for summary judgment sustained. [42 U.S.C. § 405(g)]; Jones v. Finch, 416 F.2d 89 (10th Cir. 1969).

It is ordered that defendant's Motion for Summary Judgment be Sustained, and that plaintiff's Motion for Summary Judgment be Overruled.

It is further ordered that the Clerk enter Judgment in favor of defendant, and against plaintiff, Dahlia Lois Brock, affirming the decision of Robert H. Finch, United States Secretary of the Department of Health, Education and Welfare. The Clerk is further directed to forward a copy of this Memorandum and Order to the parties herein named.