**Deelah A. MADDOX, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. CIV–81–71–D.**

United States District Court, W.D. Oklahoma.

Dec. 28, 1984.

Jim Grennan, Oklahoma City, Okl., for plaintiff.

David L. Russell, U.S. Atty. by Paul Richards and Charles Waters, Assts., Oklahoma City, Okl., Frank V. Smith, III, Acting Regional Atty. by Mary K. Biester, Asst. Regional Atty., Dept. of Health and Human Services, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

### POSTURE OF THE CASE

The Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final administrative decision of the Defendant Secretary that the Plaintiff is not entitled to a period of disability or disability insurance benefits under Title II of the Social Security Act. The Secretary filed her Answer, accompanied by the certified transcript of the administrative record of the case upon which her decision was based, and both sides have fully briefed the case, which is thus submitted for decision on the pleadings and the briefs of the parties.

Plaintiff filed her application for disability benefits under Title II and for supplemental security income benefits under Title XVI on September 6, 1978, alleging disability due to emphysema, asthma, grand mal seizures, and abdominal hernia (Tr. 52).[1] These claims were denied administratively, both initially and on reconsideration (Tr. 86–93). Upon Plaintiff's request, an Administrative Law Judge (ALJ) of the Social Security Administration considered her

---

1. Hereinafter, the notation "Tr." with a number indicates a reference to a page in the transcript of the record of administrative proceedings filed by the Secretary herein.

claim *de novo* and conducted a full hearing on January 8, 1980 (Tr. 25–51), at which the Plaintiff and her doctor, A.A. Cooperman, D.O., appeared. The ALJ issued a recommended decision on March 6, 1980, denying her claim for disability benefits (Tr. 14–19). On the same day, the ALJ issued a decision allowing the claim for supplemental security income (Tr. 315). For each of these decisions, the ALJ had to determine whether the Plaintiff was disabled, and the standard for that determination is the same under both Title II and Title XVI, but the two determinations depend on her being disabled at different dates. So, for purposes of the supplemental security income decision, the ALJ determined that the Plaintiff was disabled as of the date of her application on September 6, 1978, but for the purposes of her disability benefits, he found that she was not disabled as of the date on which she last met the special earnings requirement, which both sides agree is March 31, 1965.

The Plaintiff then asked the Appeals Council to review the recommended denial of the disability benefits, but this request was denied on November 17, 1980 (Tr. 4–5), and the ALJ's recommendation became the final decision of the Secretary, of which the Plaintiff sought judicial review in this suit. When the Court received the administrative record transcript, it found that it could not get even a general sense of the testimony at the ALJ's hearing, as the transcript thereof was based on a largely inaudible electronic recording, and therefore the Court remanded the case to the Secretary. The Appeals Council, finding that it could not reconstruct the transcript of the hearing, vacated its decision and remanded the matter to another ALJ for a second hearing (Tr. 312). The second ALJ held a new hearing on January 14, 1982 (Tr. 317–410), which was attended not only by the Plaintiff and her physician but also by her attorney and a doctor acting as medical advisor to the Secretary, Robert A. Schneider, M.D. (Tr. 317). The second ALJ found the Plaintiff disabled on March 31, 1965 and recommended a decision in her favor (Tr. 301–07). The Appeals Council reviewed the findings

*sua sponte*, found them unsupported by substantial evidence, and found that the Plaintiff was not disabled on March 31, 1965, and denied her disability benefits (Tr. 296–300). The Plaintiff now seeks judicial review of this final decision.

## ISSUE

The only issue before the Court is whether the final decision of the Secretary as to disability benefits is supported by substantial evidence. This issue is complicated somewhat, however, in that the decision of the Appeals Council rejected the recommendation of the ALJ, who actually heard the testimony of the witnesses and who based his recommendation squarely on the opinion of Dr. Cooperman, Plaintiff's physician, that if pulmonary function studies had been done on the Plaintiff on or before March 31, 1965, the level of severity of her impairment would have met the criteria of the medical listing in 20 C.F.R. Part 404, Subpart P, App. 1, § 3.03 A (1984). Hence, in large part, the question is whether there is substantial evidence to support the Appeals Council's finding that Dr. Cooperman's testimony had been impeached and was entitled to little weight.

## LAW AND REGULATIONS

A person claiming entitlement to Social Security disability insurance benefits has the burden of establishing that he was disabled on or before the date on which he last met the statutory earnings requirement. *McMillin v. Gardner*, 384 F.2d 596 (Tenth Cir.1967); *Stevens v. Mathews*, 418 F.Supp. 881 (W.D.Okla.1976); *Dicks v. Weinberger*, 390 F.Supp. 600 (N.D.Okla. 1974); *See Johnson v. Finch*, 437 F.2d 1321 (Tenth Cir.1971). For the purposes of Plaintiff's claims, "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(a) (1976).

The scope of the Court's review authority is narrowly limited by 42 U.S.C. § 405(g). The Secretary's decision must be affirmed if supported by substantial evidence. *Gardner v. Bishop*, 362 F.2d 917 (Tenth Cir.1966); *Stevens v. Mathews, supra*. Substantial evidence is more than a scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Stevens v. Mathews, supra*. However, substantial evidence is less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Stevens v. Mathews, supra*.

The credibility issue is well framed by a quotation in Plaintiff's brief (Plaintiff's Brief in Rebuttal, March 25, 1984), quoting from *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383 (Sixth Cir.1978):

> He [the Secretary] should and does have more leeway in making findings and then rejecting the findings of an Administrative Law Judge than does an appellate court in reviewing the decisions of a trial judge or jury. Nevertheless, his conclusion must not be based on less than substantial evidence, a test which is imprecise, but probably affords as much clarity as is possible.
>
> If the Appeals Council concludes that it must disagree with the credibility findings of an Administrative Law Judge, then it may do so, but only if there is substantial evidence undercutting the reliability of the testimony, evidence which "a reasonable mind might accept as adequate to support a conclusion" that the Administrative Law Judge was wrong about the credibility of the witnesses, in spite of the advantage of having heard the testimony and lived with the case. *Consolidated Edison Co. v. N.L.R.B.*,

305 U.S. 197, 39 S.Ct. 206, 83 L.Ed. 126 (1938).

The Secretary's regulations, none of which have been challenged by the Plaintiff, describe the series of steps which the Secretary follows in evaluating the facts material to the disability issue. 20 C.F.R. § 404.1520(a) (1984). In the case of the Plaintiff, as the Plaintiff passed the first step due to the fact that she had not worked since March 31, 1965, the issue was whether her impairment was "severe." To be disabled, the Plaintiff's impairment must have been "severe," § 404.1520(c), which in turn means "impairment(s) which significantly limits your physical or mental ability to do basic work activities," § 404.-1520(c), *cf.* § 404.1521(a), including such physical functions as walking, sitting, lifting, and pushing, § 404.1521(b)(1). Of particular significance in the instant case is the use of the medical listing of impairments, as the second ALJ found disability solely on the basis that the Plaintiff met the listing (Tr. 306), while the Appeals Council found that the listing was not met and also that the record was devoid of other evidence of any severe impairment (Tr. 299) as of March 31, 1965. If an impairment meets the duration requirement and meets or equals a listed impairment, then the impairment is "considered severe enough to prevent a person from doing any gainful activity," § 404.1525(a), and the claimant is considered disabled without the Secretary's going to the next step and considering the age, education, and work experience of the claimant, § 404.1520(d).

## THE ADMINISTRATIVE FINDINGS

The second ALJ found the Plaintiff disabled since March 1, 1965, based on findings (Tr. 306) that:

2. The claimant has the following impairment: chronic asthmatic bronchitis.

3. Since March 1, 1965 the claimant's impairment has been attended by findings meeting the criteria of sec-

tion 3.03(A), Appendix 1, Subpart P, Regulations No. 4.

The entire discussion supporting these findings is as follows (Tr. 306):

At the hearing both Dr. Cooperman and Dr. Schneider testified that the claimant has a severe chronic asthmatic condition at the present time and both are in agreement that pulmonary function studies as far back as 1970 indicate that the claimant's pulmonary impairment met the medical listing at that time. Dr. Schneider testified that there is no objective evidence to indicate that the claimant met the listings in 1965. On the other hand, Dr. Cooperman testified that he has been treating the claimant since 1960 or 1961 and that her condition at that time was such that she would have met the listings in 1965.

The hearing record contains no reports of blood gas studies or pulmonary function studies made prior to 1970; however, the record does show a number of hospitalizations prior to that time and the progressive nature of the disease is well known. These factors, combined with the testimony of Dr. Cooperman, which has not been refuted, provide a reasonable basis for a retrospective projection of the claimant's condition, at such a level of severity as to meet applicable listings, to a date prior to March 31, 1965. It is, accordingly, the conclusion of the Administrative Law Judge that as of March 1, 1965 [sic] the claimant's asthma was attended by findings meeting the criteria of the medical listing at section 3.03A, Appendix 1, Subpart P, Regulations No. 4 and that since that time the claimant's disease has persisted at the same, or a greater, level of severity through the present time. The claimant is therefore considered to have been disabled since March 1, 1965 [sic].

The Appeals Council, on the other hand, found that as of March 31, 1965, the only medically determinable impairment of the Plaintiff was bronchial asthma (Tr. 300, Finding No. 3). The Appeals Council also found:

4. The evidence fails to demonstrate severe and persistent subjective symptoms that would have prevented the claimant from engaging in substantial gainful activity on or before March 31, 1965.

The Appeals Council thus found that her condition was not significantly limiting and, therefore, was not a severe impairment which disabled her within the meaning of the Social Security Act. In support of these findings, the Appeals Council noted four brief hospitalizations during the years 1961–63; that she quickly responded to conservative treatment and was discharged as improved on each occasion (Tr. 296–97); that she continued to respond well to conservative treatment during brief, not too frequent hospital stays thereafter (Tr. 297); that the pulmonary function studies done on her in 1970, 1978 and 1979 failed to meet the listing (Tr. 297–98); that Dr. Cooperman's testimony that, in his opinion, the Plaintiff would have met the listing in 1965 was inconsistent with the objective evidence, particularly in light of the undisputed fact that her disease is of a progressive nature, and therefore was entitled to little weight (Tr. 299); and that the record did not establish that her work-related functions were significantly limited as of March 31, 1965 and was void of any clinical findings suggesting the required severity of impairment (Tr. 299).

## THE FACTS

The Court has carefully studied the record in this case and has found it very useful to construct the following table of the data obtained in the various pulmonary function studies which relate to the relevant listing:

**TABLE**

Pulmonary Function Studies on Deelah A. Maddox

| Doctor | Study Date/ Page | Coopera-tion Noted | Height Noted | VC–1 or FEV–1 (liters (L))* | | | MBC or MVV (L./min.)** | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Listing (1984) | Before Bronchodilation | After | Listing (1984) | Before Bronchodilation | After |
| Lowell Tr. 94 | 4–16–70 Tr. 101 | Good | 5′7″ Tr. 95 | 1.3 | .60 (VC–1) | 1.51 (VC–1) | 42 | 23 (MBC) | 51 (MBC) |
| Bynum Tr. 127 | 12–11–78 Tr. 130 | Very Poor | 5′5¼″ | 1.2 | .70 (VC–1) | 1.30 (VC–1) | 40 | 29 (MBC) | 37 (MBC) |
| Gismondi Tr. 149 | 5–31–79 Tr. 154 | Fair | 5′6¼″ | 1.2 | .9 (FEV₁) | 1.7 (FEV₁) | 41 | 20 (MVV) | 50 (MVV) |
| Cooperman Tr. 185, 286 | 8–14–79 Tr. 185 | Not Noted | 5′6¼″ | 1.2 | .945 (FEV–1) | 1.28 (FEV–1) | 41 | 34 (MVV) | 45 (MVV) |
| Cooperman Tr. 184, 287 | 11–16–79 Tr. 184 | Not Noted | 5′6″ | 1.2 | 1.49 (FEV–1) | 1.76 (FEV–1) | 41 | 25 (MVV) | 40 (MVV) |

* "Vital capacity, one second" (VC–1) and "one second forced expiratory volume" (FEV–1 or $FEV_1$) seem to be the same test even though Dr. Schneider testified otherwise (Tr. 392), apparently being confirmed by the fact that the regulation only mentions $FEV_1$; cf. App. 1, § 3.00D with Dr. Bynum's pulmonary studies form (Tr. 130).

** "Maximum breathing capacity" (MBC) and "maximum ventilatory volume" (MVV) are the same test.

The medical listing for respiratory system impairments is found at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 3.00–3.12. Impairments for asthma are subdivided in § 3.03 into categories of "chronic asthmatic bronchitis" (§ 3.03 A) and "episodes of severe attacks" (§ 3.03 B). The Plaintiff obviously has never been close to meeting the listing for episodic asthma, which requires six severe attacks per year, and such attacks must be well documented, *see* § 3.00 C. Consequently, the ALJ could find that the Plaintiff met the listing only if she met the one for "chronic asthmatic bronchitis," § 3.03 A, which the regulation says must be evaluated under the criteria for chronic obstructive airway disease in § 3.02. § 3.02 requires two tests, MVV (maximum ventilatory volume) and $FEV_1$ (forced expiratory volume for one second duration), and § 3.02 further requires that *both* tests result in values which are "equal to, or less than, the values specified in Table I, corresponding to the person's height." Thus, the table above contains the listed values for $FEV_1$ and MVV corresponding to the height noted in each of the studies in the record herein. The accuracy of the studies depends upon the subject's giving full coop-

eration, and if cooperation is less than full, the reported value will be less than the correct value but more likely to appear to meet the listed value, so the regulation requires that the subject's cooperation and ability to understand the directions be noted on the test report, § 3.00 D. Finally, in interpreting the reports of the Plaintiff's pulmonary function studies, it should be noted that, as the Plaintiff's reported values before bronchodilation were always less than 80 percent of predicted normal values, the regulation required that the tests be repeated after bronchodilation. § 3.00 D. Hence, although the Court's table states the reported values obtained from tests made before bronchodilation, the only relevant values are those obtained after bronchodilation.

In light of these observations, it will be seen immediately that none of the five tests reported values which met the listing for chronic asthmatic bronchitis. Hence, the fact that both Dr. Cooperman and Dr. Schneider testified that the Plaintiff met the medical listing at the time of the test in 1970 by Dr. Lowell (Tr. 383) should have been disregarded by the ALJ as opinion

testimony which was contrary to the evidence on which it was based and to the only objective evidence in the record. Even the Court is competent to read and compare columns of numbers and to find that neither witness could be competent to state that the Plaintiff met the listing in 1970, based on the Lowell study. However, based on this demonstrably wrong assumption, the ALJ went on to rely on Dr. Cooperman's testimony that, based on his treatment of the Plaintiff commencing in 1960 or 1961, she would have met the listings in 1965, in his opinion. (Tr. 360, 366–67).

The ALJ cites in support of this opinion the fact of the early hospitalizations and the progressive nature of the disease. Presumably the ALJ means that the disease progresses from better to worse. Both Dr. Cooperman (Tr. 368) and Dr. Schneider (Tr. 385) testified that the Plaintiff's disorder is a progressive one, meaning that it progresses from better to worse, and that pulmonary function figures would be higher numbers in earlier years. Hence, the ALJ could not possibly conclude, on the basis of the 1970 studies and the progressivity of the disease, that the Plaintiff would have met the listing in 1965.

■ Besides the progressivity of the disease, the only fact cited by the ALJ in support of his conclusion that the Plaintiff would have "met" the listings in 1965 is the fact of "a number of hospitalizations prior to" 1970. The Appeals Council examined the Plaintiff's hospitalizations in detail in its discussion. It apparently considered the most significant hospitalizations to be those prior to March 31, 1965, noting that on each of these four occasions she quickly responded to conservative treatment and was discharged as improved. (Tr. 296–97). The skimpy documentation in the record of those hospitalizations supports the Appeals Council, see Exhibit 25 (Tr. 166) and Exhibit AC–1 (Tr. 188–94). During her hospitalization of May 18–24, 1961, she was diagnosed as having status asthmaticus with right upper lobar pneumonia (Tr. 188–89). In her hospitalization on September 19–24,

1961, she was diagnosed as having acute status asthmaticus (Tr. 190), and her physician's progress notes suggest that this was partially emotionally induced and that she was discharged with improvement (Tr. 191). During her hospitalization of October 20–24, 1962, she was diagnosed as having an acute exacerbation of status asthmaticus (Tr. 192), and progress notes say that she was responsive to therapy and also note an "emotional etiology for exacerbation" (Tr. 193). During her hospitalization of September 11–17, 1963, she was diagnosed with acute status asthmaticus with a nonproductive cough, which responded satisfactorily to therapy (Tr. 166, 194). This record is void of any clinical findings that might support the ALJ's conclusion that the Plaintiff had met the listings beginning in 1965 and continuing to the present. The documentation of the Plaintiff's hospitalizations in 1966 and 1967 is much better and does show that she had a serious condition but does not support the conclusion that she would have met the listing in 1965.

The ALJ stated, as partial grounds for finding "a reasonable basis for a retrospective projection" that the Plaintiff met the listing, that the testimony of Dr. Cooperman "has not been refuted" (Tr. 306). However, the Appeals Council found that Cooperman's testimony was inconsistent with the evidence and was challenged when Dr. Schneider testified that Plaintiff's condition in the early 1960's could not be surmised with any degree of accuracy without objective evidence (Tr. 299). The Court agrees with the Appeals Council. Dr. Cooperman did in fact indicate that pulmonary function studies were used mainly to confirm clinical impressions and were not really needed to predict the severity of a condition and could even be anticipated from clinical observations (Tr. 366–67, 373), and Dr. Schneider considered this preposterous and ridiculous (Tr. 388–89), thus refuting Dr. Cooperman and supporting the Appeals Council. Indeed, Dr. Schneider's view is obviously embodied in the regulation, as the regulation makes meeting this particular listing of impairment turn solely on the laboratory results and not at all on clinical

findings. This undercuts the ALJ's findings and the credibility of Dr. Cooperman.

The Appeals Council's consideration of the short duration of the hospitalizations and the Plaintiff's quick response to conservative treatment (Tr. 297, 298), together with the reports of the pulmonary function studies and other evidence, shows that it did consider the available objective evidence. That evidence further undermines Dr. Cooperman's credibility. The pre-1965 documentation in the record fails to note any objective findings of what the regulations call "signs," § 404.1528(b), but Dr. Cooperman testified at the January 14, 1982 hearing before the second ALJ that he had observed certain objective signs 17 years or more previously, including retraction of intercostal tissue [i.e., muscles between the ribs, used in breathing], cyanosis or blue coloring, and spatulation or configuration or clubbing of the fingers (Tr. 371, 375). These signs have been mentioned by counsel for the Plaintiff as objective medical findings which support the second ALJ and undercut the Appeals Council. As noted by counsel for the Secretary, however, the credibility of Dr. Cooperman's testimony is directly undercut by a positive observation in the report of Dr. Lowell on his pulmonary function studies done in 1970, that "There is no hepatomegaly, *clubbing,* pedal edema, or adenopathy." (Tr. 95, emphasis added). Further, Dr. Schneider testified that objective signs that should have been observed and noted but which he did not find either in the record or in the testimony of Dr. Cooperman at the second hearing would include wheezing, a prolonged expiratory phase, and a very flat diaphragm (Tr. 386, 395, 397, 403–404). However, somewhat in support of Dr. Cooperman, the Court's study of the record shows that as early as November 2, 1965, although that is *after* the critical date, a M. Crosthwait, M.D., of Midwest City Memorial Hospital noted "moderate wheezing and respiratory rales heard throughout all lung fields ... Dilitation became uneasy and retraction of the intercostal accessory muscles of respiration." (Tr. 195) Dr. Crosthwait also noted in his history a (subjective)

claim of cyanosis, and the next year, Dr. Eskridge at St. Anthony Hospital, in progress notes dated 8–27–66, seventeen months after the critical date, noted an observation of cyanosis (Tr. 205). Also, a radiographic report dated November 4, 1965, noted a depressed diaphragm and hyperaeration of the lung fields (Tr. 199), and a radiology report at St. Anthony Hospital from the August, 1966 hospitalization noted hyperaeration (Tr. 208). But the Court has seen nothing in the record which would relate these specific signs back to March 31, 1965 or elaborate on their degree of severity. Moreover, the history notes of Dr. Moorman Prosser, M.D., a psychiatrist, dated April 27, 1966 (Tr. 201–02) and Dr. Prosser's letter to Dr. Cooperman (Tr. 203) are not a picture of a disabled person. For example, in his notes is found the following:

Rx 2   If you insist on divorce

Get calmed down—It's making me wheeze

Get a job

Pay your * * * * *

Then do as you can best * * *

Mother: She never would take care of herself & makes herself sick—

Goes out in nite air—stays out too late—gets too tired—

Likewise the report of consultation, dated August 28, 1966, of Dr. Singleton, to whom Dr. Eskridge referred the Plaintiff for asthma treatment at the time of her first pregnancy, says (Tr. 206):

"Pt. 2 mo pregnant & adm. c̄ asthma. Onset @ 2 wks of ago. She has some wheezing perennially & worse in summer. Worse in the last 2 mo. and very bad for one wk. She has been treated by Dr. Cushing and uses Aminaphylline supp., T—al, Asthmanephrine spray and some other tab. c̄ temporary relief. She was given ? [7?] Adrenaline this AM by LDO & sent to SA.

BP 130/80 P108 Lungs are hyperresonant and there is generalized insp. & exp. wheeze. Heart—."

Finally, counsel for the Plaintiff has mentioned emphysema and asserted that the Plaintiff meets § 3.04 of the category of impairments in Appendix 1, which relates to diffuse pulmonary fibrosis. And, Dr. Cooperman testified that the Plaintiff was "emphysemic" in the early 1960's (Tr. 357), which he suggests refers to a terminal stage (Tr. 377–78). But Dr. Schneider testified that although blood gas studies have been available for use for a long time, there were no such studies or other objective findings of gas diffusion impairment in the record (Tr. 406–10), and he was not satisfied with Dr. Cooperman's discussion of his x-rays, which if properly serialized could show the progress of emphysema (Tr. 401). Evidently, neither the second ALJ nor the Appeals Council considered the evidence regarding emphysema to be important, as both focused solely on the asthma question, even though the Plaintiff's application had claimed emphysema as well as asthma. The Appeals Council did note, however, that Plaintiff's claims of seizures, female problems and emotional problems were either mild or well controlled (Tr. 299).

Of course, the ALJ could not find that the Plaintiff actually met the listings in 1965. Rather, he found that she had "findings meeting the criteria of the medical listing ... [which have] persisted at the same, or a greater, level of severity through the present time." (Tr. 306). If this is treated as a finding of equivalence to the listed impairment, rather than a meeting of the listing, the Court still finds that the reversal by the Appeals Council is supported by substantial evidence. Statements by physicians that a claimant is disabled or unable to work are not binding on the Secretary, 20 C.F.R. § 404.1527. Likewise, a listing is not met merely because a physician diagnoses a claimant as having a listed impairment; a claimant must also have the findings shown in the listing of that impairment. § 404.1525(d). The Secretary considers and compares the symptoms, signs, and laboratory findings available regarding a claimant's impairment, § 404.1526(a), but a claimant's statement of

symptoms alone is not enough to establish even an impairment, § 404.1528(a), and signs not only must be observed but must be shown by medically acceptable clinical diagnostic techniques, § 404.1528(b). Finally the Secretary may consider the medical opinions of physicians, including those like Dr. Schneider who are hired by the Secretary to aid in determining whether medical equivalence is present, § 404.-1526(b).

■ Moreover, although the burden of proof is on the claimant in the administrative proceeding and therefore the Secretary's denial may be upheld on the basis of a substantial lack of evidence, there is affirmative evidence in the record which additionally supports the Secretary in the instant case. First, the Plaintiff brought to term a pregnancy in 1966 and a second pregnancy in 1967, which, in the opinion of Dr. Schneider (Tr. 387, 398), would normally be very good tests and challenges to the respiratory system. Second, after Dr. Lowell, based on his April, 1970, pulmonary function tests on the Plaintiff, reported in a letter to a rehabilitation counselor that the Plaintiff "would be able to engage in sedentary or light work activities on a regular basis" (Tr. 95), the Plaintiff attended Oscar Rose Junior College for two-and-a-half years, carrying a relatively heavy load at least her first two semesters, including laboratory work of four hours per day at a hospital, according to the Plaintiff's own testimony (Tr. 346–47). Third, in May, 1979, after the Plaintiff filed her claim for disability benefits and 14 years after the last date on which she met the special earnings requirements, Dr. Gismondi did his pulmonary function studies on her and, after bronchodilation, found both her $FEV_1$ and MVV values to be well above the listed values (see table above) and expressed the opinion that her "chronic obstructive pulmonary disease, a marked degree with moderately severe bronchoconstriction [was] responsive to bronchodilators" and that she "should be able to do light to sedentary work quite well and perhaps better once she is treated of her bronchoconstriction ... [if she has] a clean environ-

ment away from irritants and probably also away from patients." (Tr. 151). These favorable results and opinions are confirmed by the results of Dr. Cooperman's own studies in August and November of 1979, and, combined with the lack of documentation regarding emphysema, would seem to call into question the first ALJ's allowance of supplemental security income benefits, which appears to have been based primarily on the testimony of Dr. Cooperman (cf. Tr. 17–18 with Tr. 316), and they certainly add a substantial basis for finding that the impairment of the Plaintiff in 1965 was not severe.

Hence, the Court concludes that the Appeals Council's findings that on March 31, 1965, the last date on which the Plaintiff met the special earnings requirement, the medically determinable impairment which the Plaintiff had was bronchial asthma, rather than chronic asthmatic bronchitis as the second ALJ found; that this condition did not significantly limit her ability to work and was therefore not "severe" within the meaning of the regulations, and therefore that she was not "disabled" within the meaning of the Social Security Act, are supported by substantial evidence in the record. As the decision of the Appeals Council is the final decision of the Secretary, it is therefore affirmed.