**James P. TAYLOR, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE**
and
**United States of America, Defendants.**

**Civ. A. No. KC–3470.**

United States District Court,
D. Kansas.

June 14, 1973.

Thomas M. Dawson, Leavenworth, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., James A. Pusateri, Asst. U. S. Atty., Kansas City, Kan., Paul P. Cacioppo, Regional Atty., Michael Romain, Atty., Dept. of Health, Education and Welfare, Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This is a proceeding under Title II of the Social Security Act, as amended, 42 U.S.C. § 401 et seq. Section 405(g) provides for judicial review of a "final decision" of the Secretary of Health, Education and Welfare. The case is presently before the court on plaintiff's motion to remand, and the defendants' motion for summary judgment.

Plaintiff first filed his application to establish a period of disability, as pro-

vided in § 416(i), and to obtain disability insurance benefits, as provided in § 423. On April 30, 1971, at plaintiff's request, a hearing was held, at which plaintiff and his attorney appeared. On June 30, 1971, the hearing examiner rendered a decision unfavorable to plaintiff. He found that plaintiff was not under a "disability," as defined in the Social Security Act, at any time when he met the earnings requirement of the law. On November 23, 1971, after receipt of evidence in addition to that which was before the hearing examiner, the Appeals Council of the Social Security Administration affirmed the decision of the hearing examiner. Thus, the decision of the hearing examiner stands as the final decision of the Secretary.

The facts are not essentially in dispute. Plaintiff's application, filed January 30, 1968, states that he was born June 13, 1925, and that he became unable to work in May, 1943, at the age of 17, by reason of a mental impairment.

Plaintiff served in the United States Navy from May 5, 1943, to August 12, 1943. He testified that on entering the service he was examined and found to be in excellent physical and mental condition. He claimed that his mental condition began to deteriorate after suffering a head injury while in the Navy. He felt that perhaps his subsequent mental illness was attributable to this injury.

In describing his mental condition after his discharge from the Navy, plaintiff testified that there were periods when he was lucid and periods when he had no memory of what had occurred. He alleged that in this period he also suffered severe head pains, aphasia, nausea, blackout spells, paranoia, and delusions and/or hallucinations. He stated that in 1944 or 1945 he began to believe that he was a supreme being and that God worked through him. He also stated that at this time he often had an uncontrollable urge to run, which resulted in his running until he collapsed.

Plaintiff testified that he felt he began to "come out of this mental thing" in the middle or late 1960's. He said that he believed his mental condition had improved to the extent that he was able to perform work by January, 1968.

He also claimed numerous hospitalizations and operations for brain concussions, bone fractures, and chronic kidney disease.

The record contains many allegations by plaintiff regarding his mental condition. These allegations are based on reports by examining and treating physicians, which he claimed to have in his possession but which are not in the record.

The medical evidence of record begins with a report dated July 26, 1943, from the United States Naval Hospital, Jacksonville, Florida. Plaintiff's medical history revealed that he had suffered a concussion 3 months prior to his enlistment, resulting in three weeks of hospitalization for memory defects, dizziness, and headaches. On admission to the Naval Hospital on July 12, 1943, plaintiff stated that he had experienced a similar episode in 1941. Plaintiff was admitted to the hospital with complaints of headaches and aphasia. Neurological and physical examinations of plaintiff were essentially negative, as were laboratory tests. Memory tests showed that plaintiff had a considerable memory defect, both for recent and remote events; however, no evidence of psychosis was noted. Plaintiff's condition was finally diagnosed as "intracranial injury." The report concluded with the following statement:

"This patient is considered unfit for service because of his disability. He is not a menace to himself or to others and will not become a public charge as he has a home to which he will go."

In an undated, unsigned statement allegedly containing excerpts from Navy medical records, the following pertinent entries are made:

"5/5/43. No evidence of disease, mental defects, etc.

MENTAL STATUS: He has some confusion of thought processes at times, has been becoming increasingly irritable for several months, and has definite memory defects. Suffers

from attacks of dizziness, headaches of varying intensity and duration. Is suffering from Aphasia brought on in all probability by Intracranial Injury. Memory defects of both recent and remote events.

7/22/43. At Staff Conference this date it was the consensus of opinion that this patient is suffering from the effects of the concussion which he received in 1941 and which was aggravated by a similar injury in 1943.

The admission diagnosis of Intracranial Injury is concurred in by the N. P. Staff."

A report dated August 23, 1956, by Paul R. Miller, M.D., staff psychiatrist at the Medical Center for Federal Prisoners (Medical Center), Springfield, Missouri, stated that plaintiff underwent a neuropsychiatric examination upon admission to the Medical Center in 1956. According to the report plaintiff stated that although he had been examined previously by psychiatrists, he had never been hospitalized in a mental hospital. His condition was diagnosed as:

"Schizophrenic reaction, chronic, undifferentiated type with many pseudoneurotic symptoms, chiefly those of autistic thought, paranoid trends, flatness of affect [sic], defect of interpersonal relations, and uncontrolled antisocial and homicidal traits."

The report further noted that plaintiff's memory showed no gross defect for recent or remote events. The psychiatrist concluded the report by stating:

"Although the patient is psychotic in a medical sense, there is doubt in the present examiner's mind whether he could be represented to the court as legally insane. No specific form of therapy is indicated at this time. Job should be consistent with his above average ability, probably of a clerical nature."

A report dated May 2, 1962, by John Dickinson, M.D., staff psychiatrist at the Medical Center, revealed that plaintiff underwent a neuropsychiatric examination sometime after his readmission to the Medical Center in 1961. At that time plaintiff was again diagnosed as schizophrenic.

Subsequent reports from the Medical Center indicated that as time passed plaintiff's mental condition improved. A parole progress report dated January, 1963, reported that plaintiff was a "partially recovered chronic undifferentiated schizophrenic who is not presently suitable for release or transfer." An annual parole review dated June 17, 1964, noted: "He [plaintiff] does not manifest acute symptoms at present." A parole review dated May, 1965, stated that plaintiff was examined by Dr. H. Modlin, a psychiatric consultant from the Menninger Foundation, on April 27, 1965. The report reveals that Dr. Modlin was of the opinion that plaintiff was currently functioning "on a non-psychotic level and appears to be sociopathic."

A special progress report dated January 11, 1967, disclosed the results of a staff psychiatric examination of plaintiff on December 22, 1966, wherein the examining physicians found plaintiff too unstable to transfer to a regular penal institution at that time.

In a special progress report dated November 29, 1967, H. Wayne Glotfelty, M.D., a psychiatrist and Chief of Psychiatric Service at the Medical Center, reported the results of a staff psychiatric examination of plaintiff on November 15, 1967. In his report, Dr. Glotfelty stated:

"There are no symptoms present to lead to a diagnosis of schizophrenic reaction. He is not on any medication nor is he in need of any psychiatric treatment, nor has he been for a long time. However, when it was brought up with him about a transfer, he started his regular previous routine of being unable to leave because of his legal activity, his correspondence with many law officials, and his program that he has set up for himself at this institution.

It was the unanimous opinion of the Staff that he should be transferred to a regular penal institution. He is not and has not been sufficiently ill to

warrant retention at the Medical Center as a psychiatric patient. If he should become emotionally upset, which is anticipated, he should be handled as any non-patient at the Medical Center.

DIAGNOSIS: Sociopathic personality."

Dr. Glotfelty stated that a recommendation was made to transfer plaintiff to a regular penal institution in August, 1966; however, it was decided that plaintiff would remain at the Medical Center until litigation which plaintiff was a party to was completed. The doctor also noted that a December, 1966, transfer was deferred because plaintiff was anxious about being transferred.

The record contains excerpts of testimony by John K. Dickinson, M.D., psychiatrist, and Russell O. Settle, M.D., Warden and Chief Medical Officer of the Medical Center, in the July, 1961 case of Taylor v. United States (D.Minn., 4–60 Civil 308). Dr. Dickinson testified that he became acquainted with plaintiff in late 1958 or early 1959. He felt that it could be inferred from plaintiff's condition that plaintiff had been a schizophrenic since childhood.

Dr. Settle testified that he first became acquainted with plaintiff in July, 1956. He stated that schizophrenia usually begins in early life and that the inference which could be drawn from plaintiff's condition was that he had been schizophrenic prior to 1956. Dr. Settle testified, however, that he had not examined plaintiff personally and therefore was unable to give an opinion of the seriousness of his condition in 1956.

The record contains a number of unsigned, undated written statements attributed to George R. Norton, M.D., plaintiff's family physician through 1945. The gist of these statements is that Dr. Norton, who stated that his knowledge of mental disease was meager, felt that in light of plaintiff's subsequent case history, plaintiff was suffering from a mental disorder as early as 1943. Dr. Norton also stated that he noticed a definite change in plaintiff's behavior after his discharge from the Navy. He believed this was due to a mental defect.

Plaintiff resides at the Federal penitentiary, Leavenworth, Kansas. He is a high school graduate. He attended five or six colleges, although he did not graduate. He testified that he did not remember how many college credits he had. He has been married a number of times, but he did not remember how many wives there were.

He testified that he may have had between 35 and 50 jobs in the period from August, 1943, through 1947. During this period, he allegedly worked at a variety of jobs, including manual laborer, retail salesman, schoolteacher, coach, insurance salesman, freight handler, sports writer, etc. He alleged that his mental illness prevented him from keeping a steady job.

The record reveals that plaintiff was jailed for investigation in February, 1950. He then served terms in the Federal penitentiary for forgery, impersonating an FBI agent, and transportation of a stolen car in interstate commerce. On July 5, 1956, plaintiff was sentenced to 20 years in prison for interstate transportation of false and forged securities, and to life imprisonment for murder.

He was admitted to the Federal penitentiary at Leavenworth, Kansas, on July 12, 1956. On July 17, 1956, he was transferred to the Medical Center for Federal Prisoners, Springfield, Missouri, because of his mental condition. In April, 1968, he was transferred back to the Federal penitentiary, Leavenworth, Kansas.

In 1961, he began working as an industries' payroll clerk at the Medical Center. He continually achieved above-average work reports on this job. In 1964, it was reported that he was beginning to learn cost accounting and was found to be proficient in general office work. At the hearing, he testified that he was presently doing bookkeeping and

industrial cost accounting at the penitentiary. He said he worked an 8-hour day, 5 days a week, and that he had an excellent work record.

Plaintiff testified that his foster father initiated a disability claim with the Veterans Administration after plaintiff's discharge from the Navy in 1943. Plaintiff said the claim was disallowed. There is no evidence in the record regarding this claim.

In support of plaintiff's motion to remand, he points to certain documents which apparently were unavailable at the time of the hearing, the contents of which he alleges would have had an impact upon the hearing examiner's final decision. The documents referred to would have no bearing upon the examiner's determinative finding that Taylor was not under a "disability" as defined in the Social Security Act on or before the expiration of his insured status on March 31, 1947. Instead, they relate to the government's assertion that there exists substantial evidence in the record to show that plaintiff's "disabling mental condition" ceased more than fourteen months prior to January, 1968, thus disqualifying him for this reason as well.

█ The court concludes that the documents are cumulative of existing evidence; that they would have no effect on the reasons employed by the examiner in denying plaintiff the requested benefits; and that they are unnecessary for the development of facts needed for the determination of this case. Accordingly, the court finds that "no good cause" has been shown for remanding this matter to the hearing examiner, and plaintiff's motion to remand is denied. 42 U.S.C. § 405(g).

█ Under 42 U.S.C.A. § 405(g), the Secretary's decision is conclusive upon this court if supported by substantial evidence. The scope of our review then is rather limited. As stated in Johnson v. Finch, 437 F.2d 1321 (10th Cir. 1971):

"Needless to say, the judges of this court do not sit as a super trial court empowered to make our own determination whether appellant is disabled within the meaning of the Act. That is true regardless of how we would have decided the issues had we constituted the fact finding tribunal. On the contrary, 42 U.S.C. § 405(g) restricts judicial review stating: 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . . '."

The burden of proving disability is on the plaintiff. 42 U.S.C. § 423(d); Johnson v. Finch, *supra*; Brock v. Finch, 313 F.Supp. 1187 (D.Kan.1970). He had the burden of establishing his claim that he was "disabled" within the meaning of the Social Security Act on or prior to the expiration of his insured status on March 31, 1947, to the extent that he could not engage in "substantial gainful activity." See 42 U.S.C. § 416(i)(1); § 423(d)(1)(A).

Even if we assume the correctness of plaintiff's contention that he was disabled after March 31, 1947, this is immaterial on the issue of whether his disability commenced at a time when he met the coverage requirements of the Act. 42 U.S.C. § 416(i) and § 423(c)(2); see Harrison v. Richardson, 448 F.2d 638 (6th Cir. 1971), and cases cited therein.

█ Here, the Secretary's decision was that plaintiff did not meet his burden of proof; *i. e.* he did not prove he was "disabled" on or before the end of his insured status to the extent that he could not engage in "substantial gainful activity." Although the medical evidence pertaining to plaintiff's disabling condition during the insured period was in conflict, in situations such as this, it is for the Secretary and not the court to weigh the evidence, resolve the conflicts, and determine the cause accordingly. See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

We find the Secretary's decision is supported by substantial evidence in the record. Accordingly, defendants' motion for summary judgment is sustained.

It is so ordered.